CANFIELD *against* HARD and others.

One partner, after the dissolution of the partnership, has no exclusive right to any part of the partnership funds, until the partnership account has been adjusted, and a balance in his favour ascertained.

Therefore, where *A.* and *B.*, being partners in trade, mutually agreed, that *A.* should devote his attention to one kind of business, and *B.* to another, and that all the profits and losses accruing from both kinds should be equally shared between them; it was held, on a bill in chancery brought by *A.*, after the death of *B.*, against his administrators, for the account books kept by *B.*, that these facts alone evinced no title in *A.* to the partnership effects; and the bill was dismissed.

This was a bill in chancery, stating, That the plaintiff and *Epenetus Curtis*, since deceased, being partners in trade at *Bridgeport*, in this state, on the 1st of *September*, 1821, agreed, that *Curtis* should obtain the office of deputy sheriff under the sheriff of *Fairfield* county, if it could be lawfully obtained by him; that he should devote as much of his time as should be necessary for the faithful execution of the office to the duties of it, while the plaintiff should more especially devote his time to the concerns of the company in trade; that all the profits and losses arising from said office, as well as from their business should be equally shared between them; that *Curtis* obtained said office; that the business of the partnership, in relation to said office and to trade, was conducted by the plaintiff and *Cur-*

*tis*, in pursuance of this agreement, until the death of *Curtis*, on the 3rd of *December*, 1823, separate books being kept by the company, wherein all charges for business done in the execution of said office were entered ; that at the time of *Curtis's* death, there was due to the partnership for business done by him in the execution of said office, and charged in said books, the sum of 1100 dollars ; that the defendants were appointed administrators on the estate of *Curtis*, and took into their possession said books, and withheld them from the plaintiff. The bill prayed for a decree, that the defendants deliver said books to the plaintiff. There was, also, a prayer for general relief.

On a hearing before the superior court, on a general answer denying the facts stated in the bill, they were found to be true. It was also found, that *Curtis's* estate was represented insolvent; that commissioners were appointed ; that the plaintiff exhibted a claim against said estate for a moiety of *Curtis's* earnings in said office, consisting of all sums of money collected by him, in his life-time, and by the defendants, since his death, for services rendered in said office ; that the commissioners settled the account, and allowed to the plaintiff, on such claim, the sum of 294 dollars, 12 cents ; and that thereupon they returned their report to the court of probate, which was accepted and approved.

The case was reserved for the advice of this Court, on the question what decree ought to be passed.

*Sherman* and *Bissell*, for the plaintiff, contended, That the facts stated in the bill, and found, entitled the plaintiff to the specific relief sought. The books were kept by the partnership ; and the charges made in them belonged to the partnership. The plaintiff is, of course, entitled to the books, unless some insuperable objection be shewn.

1. Is the agreement set forth in the bill, illegal ? It is not opposed to the express provisions of any statute, or to any positive rule of the common law. Is it repugnant to any principle of sound policy ? The agreement was not, that *Canfield* should exert his influence and interest to obtain the office for *Curtis*, and then that *Canfield* should receive a share of the emoluments of the office ; but that *Curtis* should obtain the office, if he could, by lawful means, and devote his whole time to its duties, and then that *Canfield* should share in the fees earned by *Curtis*, in the same manner that *Curtis* was to share in the earn-

*Fairfield,*
June,
1826.

Canfield
*v.*
Hard.

ings of *Canfield* in trade. The policy of the law is to prevent undue practices to obtain an office; but when the office is fairly obtained, may not the incumbent dispose of the avails of his business as he pleases? It can make no difference, that this office could not be executed, by *Curtis* and *Canfield* as partners. *Curtis* alone was to be the *officer;* but the fees were to be the property of the partnership.

2. Does the fact, that suits for the recovery of fees charged in these books, must be brought in the names of the administrators, deprive the plaintiff of his right to the possession of the books? The books and the charges therein contained are the property of the partnership; and the plaintiff is entitled to the whole that is due on the books to pay partnership debts. The property of a bond or note may be in *A.*; he may have the legal title to it, and of course, be entitled to the possession of it; and yet it may be necessary to sue upon it in the name of *B.*

3. Is the plaintiff precluded from relief, by having exhibited his claim to the commissioners? In the first place, facts not stated in the bill, could not be found, on the general answer. If the defendants wished to avail themselves of any such facts, they should have set them forth specially, in their answer. But secondly, the facts found, if properly on the record, would constitute no defence. The exhibition of the plaintiff's claim, is no satisfaction. He is entitled to pursue all his remedies. If he gets what is due on the books, it is, as far as it goes, a bar to a recovery of what the commissioners have allowed; but an allowance, without payment, cannot affect the plaintiff's equitable rights.

*N. Smith* and *Winton,* for the defendants, contended, 1. That the agreement between *Curtis* and *Canfield,* if not illegal as opposed to public policy, was, from the nature of the case, *ineffectual* to make the charges on *Curtis's* books for fees in his office, partnership property. It is not claimed, that the *office* itself did or could belong to the partnership. Do not charges for official services stand on the same ground? The partnership, in the lifetime of *Curtis,* could not sue for them. *Canfield* cannot sue for them now. Why not? Obviously, because the partnership never had, and never could have, any property in them. We do not deny, that *Curtis,* after having collected his fees, might have put the *money* into the partnership fund; but that is a different case from this. The books and the charges made in

them, were the separate property of the *officer*, while he lived; and now belong to his personal representatives.    It is their duty to collect these charges; and for this purpose, they want the books.

2. That if the agreement had any efficacy, it was to make *Curtis* liable to account to *Canfield* for one half of his fees, when collected.    But this is not a bill for an account.    It has neither the requisite averments, nor the prayer, of such a bill.

3. That the plaintiff has not shewn himself entitled to relief of any kind.    It does not appear that any thing is due to him from *Curtis's* estate; that he has any right to call for these funds. It does not appear, that there are any debts due from the partnership; or if there be, that *Curtis* himself is not a creditor. The state of the partnership accounts is not disclosed.    *Curtis* may have furnished more than half the capital; or *Canfield* may have drawn more than his share of the profits.    In short, the plaintiff has not shewn, that he has any interest in these funds, either as the representative of the partnership, or in his individual capacity.

4. That if the plaintiff has any claim, it has become *res adjudicata* before the commissioners and the court of probate; which is conclusive, until set aside, by due course of law.

HOSMER, Ch. J. It is peculiarly observable, that the plaintiff has not alleged, that the partnership is insolvent, or that there are any debts due from it; nor has he averred, that the copartnership account between him and *Curtis* has ever been taken; or that there is a balance due to him from the company; or, indeed, any other facts, from which it appears, that he has an interest in the partnership funds.

I shall not discuss the question made concerning the *legality* of the agreement; nor the defence interposed by the defendants; as my mind has come to the result, that admitting the partnership, and repelling the defence, which I do because the determination of either is unnecessary, the plaintiff has no title to the relief requested.    It is entirely consistent with the allegations of the plaintiff's bill, that the money due on the books, and even all the company property, belonged to *Curtis*, at the time of his death.    The enquiry, it will be observed, is not merely, whether the partnership extended to the office of deputy-sheriff, and as a consequence, whether the monies due on the books were partnership property.    All this, for the sake of

*Fairfield,*
June,
1826.

Canfield
*v.*
Hard,

argument, is granted. The partnership was dissolved, by the death of *Curtis* ; (*Watson* on *Part.* 294.) and the question is, what is the right of one partner to the partneship property, as against the other. If the plaintiff has no title to the partnership effects, he cannot, in any event, have a right to the books in question.

It is an established principle, that nothing can be considered as the exclusive right of one partner, but his proportion of the funds, upon a balance being struck between all the partners ; in other words, that one partner has no exclusive right to the partnership funds, until his copartner is paid all the demands he has, in that character, on the partnership. *Watson* on *Part.* 116. *West* v. *Skip,* 1 *Vesey,* 239. *Field* v. *Clark,* 4 *Vesey,* jun. 396. *Dutton* v. *Morrison,* 17 *Vesey* jun. 193. *Nicoll* v. *Mumford,* 4 *Johns. Ch. Rep.* 522. *Rodriguez* v. *Heffernan* & al. 5 *Johns. Ch. Rep.* 417. *Robbins* & al. v. *Cooper* & al. 6 *Johns. Ch. Rep.* 186. *Brewster* & al. v. *Hummet* & al. 4 *Conn. Rep.* 540.

The shares of partners depend on the stock advanced by each, and other causes, and are in constant fluctuation. One of the partners may have put into joint stock by far the greater part of the capital ; and the other may have withdrawn more than he advanced. It is, therefore, very easy to see, that the parties originally may have been interested in very unequal shares ; or that, if there were no inequality in this respect, that one of them may have exhausted all his right, by large drafts on the funds, and not only be without right to any part of the residue, but may have become personally a debtor to the other.

From these unquestionable truths, it follows, that an averment that *A.* and *B.* were partners, when one of them makes a claim on the partnership property, is utterly insufficient to sustain any demand on the partnership funds. It is equally clear, that the title of a partner to the partnership property, as against his copartner, cannot be affirmed, and is always unknown, until the account of the copartnership is adjusted, and the balance struck between the partners.

To apply these remarks to the present case : The bill of the plaintiff alleges, that he and *Curtis* were partners ; and this is all. No account of the partnership has been adjusted ; and for aught that appears, or can appear, on the hearing of a bill so deficient as that of the plaintiff, *Curtis* had right, at his death, to all the partnership effects and demands, and *Canfield* had no title to any part of them.

If the plaintiff wanted the partnership property for the payment of company debts, he should have alleged the facts requisite to show a title to it for this purpose ; or if the partnership accounts had been adjusted with *Curtis,* and the balance was in the plaintiff's favour, so that the monies due on the books were his, he should have displayed the facts. So, if the account had not been adjusted, the plaintiff should have claimed the whole of the partnership effects and demands, and prayed an account; and, if the balance found should authorize it, a delivery of the books to him. But for aught appearing, they are rightfully in the hands of the defendants.

If the plaintiff had a title in equity to the monies due on the books, he must make out a strong and peculiar case, before they ought to be coerced from the hands of the defendants. Theirs is the legal title ; and they alone can sue and discharge them. This point, however, and other considerations urged in the case, it is unnecessary to consider. As the plaintiff has shown no equitable title to the funds, he can have no claim to the books, which are necessary to the procurement of them.

The plaintiff can take nothing by his bill.

The other Judges were of the same opinion, except BRIANARD, J., who was absent.

Bill to be dismissed.