THE BRIDGEPORT TRUST COMPANY, ADMINISTRATOR, AP-
PEAL FROM PROBATE.

Third Judicial District, New Haven, January Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A Court of Probate may properly decline to accept an inventory which
is not accompanied by an appraisal.
In order to enable the Court of Probate to perform its statutory duty
of computing the amount of a succession tax due the State, under
the provisions of General Statutes, §§ 2367–2377, it may require
the executor or administrator to file an inventory and appraisal
of all the personal property and choses in action, wherever situ-
ated, of a decedent who was domiciled in this State at the time
of his death.
If property of that nature outside the State is omitted, it is not im-
proper for the State treasurer to request the court to order an
additional inventory and appraisal embracing such property, nor
for the court, after hearing, to grant the application.

Argued January 17th—decided April 20th, 1905.

APPEAL from an order and decree of the Court of Pro-
bate for the district of Bridgeport requiring the appellant
to make an inventory of all the personal property and
choses in action, wherever situated, belonging to the estate
of George F. Gilman, deceased, taken to and reserved by
the Superior Court in Fairfield County, *Robinson, J.,* upon
an agreed statement of facts, for the advice of this court.
*Affirmance of probate decree advised.*

On March 3d, 1901, George F. Gilman, a resident of
Bridgeport and domiciled in Connecticut, died intestate.

On March 19th, 1901, the appellant was duly appointed administrator by the Court of Probate for the district of Bridgeport. On May 24th, 1901, the administrator returned a partial inventory and appraisal containing only certain personal property located in Connecticut; this partial inventory and appraisal was accepted. On June 17th, 1901, the administrator returned a further partial inventory and appraisal containing only all the real estate situated in Connecticut; this partial inventory and appraisal was accepted. On October 2d, 1903, the administrator returned a supplemental inventory showing the following additional items of personal property, namely: A claim against George H. Hartford of Orange, New Jersey, as surviving partner of the partnership comprised of said deceased and said Hartford under the name of The Great Atlantic and Pacific Tea Company; a claim against George W. Smith as surviving partner of a partnership known as The Village Store Company; and stating that the valuation of the real estate inventoried should be increased. The supplemental inventory was not accompanied by any appraisal, and does not appear to have been accepted, and no copy of it was sent to the State treasurer as required by statute in the case of the return and acceptance of an inventory.

On October 1st, 1904, the Court of Probate, upon application of the State, and of Henry H. Gallup, its treasurer, passed an order directing the administrator to file an inventory of the estate of the deceased which should include all the personal property and choses in action belonging to the intestate at the time of his death, wherever situated. The administrator appealed from this order to the Superior Court. No reasons of appeal were filed, but the parties agreed upon a statement of facts, and stipulated that the issue before the Superior Court should be framed as follows: Assuming the facts agreed upon to be proved, do they furnish a legal ground for setting aside or modifying the order of the Court of Probate? Thereupon and by further agreement of the parties, the Superior Court found the facts to be as set forth in the agreed statement, and reserved the cause for

the advice of this court as to what judgment should be rendered.

The facts found, so far as they may be material to the judgment to be rendered, are as follows : At the time of Gilman's death he owned property consisting of real and personal property both in this State and in New York, and of personal property in other States. His next of kin comprised descendants of brothers and sisters of the whole-blood and brothers and sisters of the half-blood. By the law of this State the next of kin of the whole-blood would take all the personal property ; by the law of New York they would take this property equally *per stirpes* with the next of kin of the half-blood. Theophilus Gilman, a brother of the half-blood, applied to the Surrogate Court in New York for letters of administration, alleging the intestate to have been at his death a resident of New York; and Edward L. Norton, one of said full-bloods, also applied for administration, alleging the intestate to have died a resident of Connecticut. On March 11th, 1901, eight days before the grant of administration in this State, the Surrogate Court granted letters of administration to both applicants, leaving the question of residence and consequent character of the administration undetermined. In the course of the proceedings it appeared and was found that Gilman died a resident of Connecticut, and consequently, by the laws of New York, his personal property is distributable in accordance with Connecticut law. At Gilman's death the main item of his personal property consisted of his interest in a partnership between him and George H. Hartford of New Jersey, conducting business under the name of The Great Atlantic and Pacific Tea Company, with the principal business office in New York and branch stores in Connecticut and other States. This interest of Gilman, viz., his right to a certain portion of the partnership assets after the satisfaction of the partnership debts, had an actual value at the time of his death of $556,159.85. After Gilman's death the New York administrators and the Connecticut administrators claimed that the business conducted under the name of the

Great Atlantic and Pacific Tea Company, and the property employed therein, belonged exclusively to Gilman; while Hartford claimed that it had belonged to himself and Gilman as partners, and that he had the rights of surviving partner. These conflicting claims were the source of much litigation in the courts of New York, Connecticut, and the United States. On February 20th, 1902, by agreement between the New York administrators, all the full-blood and half-blood heirs of Gilman, and said Hartford, it was agreed that the interests of all in the partnership property should be transferred to a New Jersey corporation to be organized, and that a certain portion of the capital stock of this corporation, and $100,000 of the partnership property in cash, should be allotted to said administrators in satisfaction of the claims of the Gilman estate to said business, and that the balance of said stock should belong to said Hartford. This agreement was approved by the Surrogate Court and subsequently carried out in detail. On September 1st, 1904, the personal property belonging to Gilman at the time of his death, which by the laws of the State of New York is treated as situated in that State and so subject to a transfer tax when the decedent is a nonresident of the State, was duly appraised. There now remains for distribution in the hands of the New York administrators, after paying all claims against the estate presented to them and most of the expenses of administration, a large sum of money, and a large amount of stock which represents the net increase and proceeds from all the personal property left by Gilman, except that in the possession of the Connecticut administrator.

Claims were presented to the administrator here more than sufficient, if allowed in full, to absorb the entire estate wherever situated. The estate was therefore represented insolvent and commissioners in insolvency were appointed. The estate, however, was not insolvent, and there will remain after payment of all debts and expenses of settlement some hundreds of thousands of dollars. All ante-mortem claims against said estate have now been paid, and the appellant has in its possession in money and other property

more than sufficient to pay the succession tax of three per cent. on the entire estate of said Gilman wherever situated.

*George P. Carroll,* for the Bridgeport Trust Company, administrator.

*William A. King,* Attorney-General, and *Edward A. Harriman,* for the State.

HAMERSLEY, J. This case is governed, as to all substantial questions involved, by *Gallup's Appeal,* 76 Conn. 617, and the preceding case of *Hopkins' Appeal;* it is sufficient to refer to the conclusions as to the meaning and effect of the succession tax law stated in the opinion in the latter case, without repeating them here.

The appellant having returned two partial inventories and appraisals as required by law, properly returned the further supplemental inventory of October 2d, 1903, and as this further inventory was not accompanied by an appraisal it was properly not accepted by the Court of Probate. It then became proper for the Court of Probate to direct the administrator to return a further inventory and appraisal which should include all the personal property and choses in action, wherever situated, owned by the intestate at the time of his death and not included in the partial inventories returned and accepted. It was not improper for the State treasurer to ask the court to give the administrator such direction, nor for the court to direct a hearing to be had upon his application. The order appealed from sufficiently indicates, especially in connection with the previous action of the administrator and court, the nature of the direction given, and is in legal effect the same as if it read : Said administrator is hereby ordered to file a further inventory and appraisal of the estate of said deceased, said inventory to embrace and include all of the personal property and choses in action belonging to the intestate at the time of his death, wherever situated, which are not included in the partial inventories heretofore returned and accepted. Such

being the legal effect of the order, it is unnecessary for the Superior Court to modify it for the mere purpose of changing the language.

It is true that an administrator cannot be held liable upon his final account for the value of personal property inventoried which was without the State and of which, or its proceeds, it has been impossible for him without default on his part to secure possession, any more than he can be held liable for the appraised value of other property which without his default has depreciated in value. But this is no reason why personal property without the State should not be inventoried when its inventory is required for any ordinary purpose of administration, or when required, as it has been required by statute since 1897, for the special purpose of enabling the Court of Probate to perform its statutory duty of computing the succession tax in respect to the estate in settlement.

As the facts found do not furnish any legal ground for setting aside or modifying the order of the Court of Probate, it is unnecessary to consider their possible relation to further proceedings in the settlement of the estate through the principal and ancillary administrations. The complications attending this estate have been wisely cut, through agreement of the parties interested, and there would seem to be no difficulty in now completing its settlement without further litigation.

The Superior Court is advised to affirm the order of the Court of Probate. No costs will be taxed in this court for either party.

In this opinion the other judges concurred.