ARTHUR SILBERMAN ET ALS., EXECUTORS, *vs.* WILLIAM H. BLODGETT, TAX COMMISSIONER (ARTHUR SILBERMAN ET ALS., EXECUTORS, APPEAL FROM PROBATE).

*First Judicial District, Hartford, May Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

Chapter 190 of the Public Acts of 1923, concerning succession and transfer taxes, claims jurisdiction over all classes of personal property for the purposes of succession.

Property situated in this State and owned by a decedent domiciled in another State will be distributed as directed in his will or, if he died intestate, in accordance with the laws of that State, provided such a course does not contravene our policy or prejudice the rights of local creditors.

*Transferred from Third Judicial District.

Silberman *v.* Blodgett.

Statutes imposing succession taxes are founded upon three fundamental principles: (1) that the law of the State of the decedent's domicil governs the disposition, distribution of, and succession to real estate within that State and to personal property everywhere; (2) that the State of the decedent's domicil exercises this right of taxation because of the privilege which it accords to its citizens or domiciled residents of either disposing of their property by will or, in the event of intestacy, of having it descend in accordance with the statute of distribution; and (3) that a succession tax is not a property or ad valorem tax, but a tax upon the right or privilege of succession to the estate of a decedent.

The logical conclusion from these principles, and one heretofore generally recognized and enforced, that the State of the decedent's domicil might lawfully impose a succession tax upon all personal property irrespective of its *situs,* has been modified by the recent ruling of the United States Supreme Court (*Frick* v. *Pennsylvania,* 268 U. S. 473) that a statute imposing such a tax upon tangible personal property having a *situs* in another State contravenes the due process clause of the Fourteenth Amendment.

The decision in the *Frick* case has no application to intangible personal property.

It is the law of this State and of the United States Supreme Court, that property or ad valorem taxes may always be imposed upon intangibles by the State of the creditor's domicil and, in certain instances, also by the State of the debtor's domicil where the evidences of the debt are physically situated there for longer than a temporary period or are used in a business there conducted for the benefit of the creditor, thus acquiring what is known as a "business *situs.*"

Similarly, intangibles are always subject to succession taxes in the State of the decedent's domicil, regardless of their taxability in any other State. The burden of double taxation resulting from this rule is being relieved by the passage of reciprocal exemption statutes, of which Chapter 239 of the Public Acts of 1925 is representative.

The interest of a partner under the Limited Partnership Act of New York and also under the law of this State, is the right to a share in the partnership assets after its liabilities have been deducted and a balance struck, and being, therefore, a mere chose in action, it is intangible personal property, whether the assets be realty, or tangible or intangible personalty.

Federal, State, and municipal bonds which pass from hand to hand on delivery have come to be recognized for purposes of taxation

Silberman *v.* Blodgett.

as a species of tangible personal property, though, strictly speaking, they are mere evidences of indebtedness.

In the present case, the testator's will was first proved and established in the Surrogate's Court in New York County. Subsequently it was admitted to probate in this State by the Court of Probate for the district of Stamford, where the testator was domiciled at the time of his death. From an order and decree of the Court of Probate approving the succession tax computed by the Tax Commissioner, the executors appealed. *Held:*

1. That certificates of stock in New York, New Jersey and Canada corporations, kept by the testator in a safety deposit box in New York, were taxable in Connecticut as well as in the jurisdictions of their incorporation.

2. That decedent's interest in a partnership organized under the New York Limited Partnership Act and possessed of assets consisting of realty in New York and Connecticut and tangible and intangible personalty, was taxable in its entirety in Connecticut.

3. That United States bonds and treasury certificates, also kept by the testator in his New York deposit box, were tangible personal property and were not taxable in Connecticut.

4. That coins and bank notes physically located in New York, were not taxable in Connecticut.

5. That the proceeds of a life insurance policy which was physically located in New York and was payable to the estate of the testator, was taxable in Connecticut but not in New York.

6. That a savings account in a New York bank, was taxable in Connecticut.

7. That charitable bequests by the testator to New York corporations not located in this State and not receiving State aid, were not exempt from taxation under the statute (§ 1 of Chapter 190 of the Public Acts of 1923) in force at the date of his death.

8. That, in determining the net estate subject to taxation in Connecticut, the New York transfer tax already paid by the executors upon the corporate stocks and the interest in the limited partnership, was deductible under the *Frick* case.

Argued May 7th—decided October 18th, 1926.

APPEAL by plaintiffs from an order and decree of the Court of Probate for the district of Stamford determining the inheritance or succession tax due the State from the estate of Robert B. Hirsch, late of Stamford, deceased, taken to and reserved by the Superior Court in Fairfield County (*Nickerson, J.*) upon an agreed statement of facts, for the advice of this court.

Robert B. Hirsch died on September 23d, 1924, domiciled at Stamford, leaving a will and two codicils thereto, duly executed in accordance with the law of both the States of New York and Connecticut. The plaintiffs are the surviving executors of the will. The decedent left real estate, chattels, cattle, horses, and poultry, in Connecticut, also a debt due from a resident of Connecticut and a certificate of stock in a Connecticut corporation. Plaintiffs concede the right of Connecticut to tax the transfer of these aggregating at inventory appraisal $49,097.27. The great bulk of the decedent's estate consisted of his interest in the partnership of William Openhym & Sons appraised at $1,687,245.34, and organized and doing business in New York City under the New York Limited Partnership Act; there were also (2) certificates of stock in New York, New Jersey and Canada corporations appraised at $277,864.25; (3) bonds and treasury certificates of the United States appraised at $615,121.17, and bonds due from Connecticut residents or corporations appraised at $521.67; (4) a savings-bank account in New York; (5) a life insurance policy in the Mutual Life Insurance Company of New York, payable to the estate, and (6) cash in New York City. All of these bonds and certificates of stock were at the time of decedent's death, and for a long time prior thereto had been, physically located in safe-deposit boxes in New York City. The partnership assets consisted of real estate located in New York and also Connecticut, merchandise, chattels, credits, United States bonds, and other personal property.

The testator bequeathed the larger part of his estate to charitable and educational corporations organized under the laws of New York State and located therein. The executors offered the will and codicils for probate prior to their offer in Connecticut; they were admitted

to probate in the Surrogate's Court in the county of New York, and thereafter the executors proceeded in the settlement of the estate in New York. They have paid from the funds of the estate legacies provided in the will and codicils amounting to $229,297.45. They have also paid the debts, the Federal estate tax and the New York transfer or inheritance tax which amounted to $19,166.04. The transfer tax report exempted the legacies bequeathed to charities and educational institutions in accordance with the New York law. The executors have also paid to the trustees named in the will and codicils the amounts therein mentioned for the benefit of certain designated individuals. The executors sold the stocks standing in the name of the testator and made the transfer of the same to the purchasers upon exhibiting to the transfer agents of the stock, letters testamentary issued by the Surrogate's Court in New York; and upon like exhibition, together with proof of claim and certificate of death, the Mutual Life Insurance Company paid to the executors the proceeds of the policy issued to decedent by it; and upon a like exhibition to the National City Bank of New York City, it paid to the executors the money on deposit therein to the credit of the decedent at the date of his death.

Thereafter, on January 8th, 1925, the executors exhibited to the Court of Probate for the district of Stamford an exemplified copy of the will and codicils of the decedent and of the record of the proceedings proving and establishing the same in the Surrogate's Court of New York County, and on January 15th, 1925, the court approved and accepted a bond in the sum of $1,000 conditioned that the executors should well and faithfully discharge their duties according to law and issued to them letters testamentary, made an order limiting a time for the presentation of claims and

directing the filing of an inventory of all the property including choses in action of the estate of the decedent, and appointed appraisers who made and filed an inventory of all the items of property belonging to the decedent at the time of his death.

On September 1st, 1925, the executors filed in the Court of Probate for the district of Stamford and with the Tax Commissioner of Connecticut, a statement under oath covering the property of the estate and the claimed deductions therefrom, for the purpose of determining the succession tax, if any, due the State of Connecticut. Thereafter the Tax Commissioner filed a copy of his computation of this tax with the Court of Probate, to which the attorneys for the executors made objection, but the court, on December 4th, 1925, made its order and decree approving the computation of $188,780.58 fixed by the Tax Commissioner and directing the executors to pay such amount to the treasurer of the State of Connecticut and exhibit to the Court of Probate a proper receipt therefor. . The plaintiff executors duly took an appeal from this order.

The questions of law upon which the parties desire the advice of this court are:

1. Was the decedent's interest in the partnership at the time of his death, for the purpose of the Connecticut succession tax, to be treated as consisting of specific items of partnership property?

2. Was the decedent's interest in the partnership of William Openhym & Sons subject, in whole or in part, to the Connecticut succession tax?

3. If decedent's interest in said partnership consisted of specific items of partnership property, was any or were all of the following classes of property owned by the partnership subject to the Connecticut succession tax:

(a) Real estate physically situated in New York.

(b) Merchandise, furniture and fixtures, physically situated in New York.

(c) Cash in partnership office in New York.

(d) Deposits in New York and foreign banks.

(e) Trade acceptances and notes and loans receivable, the physical evidences of the obligation thereof being physically situated in New York, and none of which were due from Connecticut residents or corporations.

(f) Advances to consignors secured by merchandise physically situated in New York, none of which advances were due from Connecticut residents or corporations.

(g) United States liberty bonds physically situated in New York.

(h) Bonds of corporations not incorporated under the laws of the State of Connecticut, the bonds being physically situated in New York.

(i) Certificates of shares of stock of corporations not incorporated under the laws of the State of Connecticut, the certificates being physically situated in New York.

(j) Prepaid expenses and advances to travelers, none of which were due from Connecticut residents or corporations.

4. Were the United States liberty bonds mentioned in Exhibit A, and constituting a part of the "partner's investments" held by the partnership, referred to in paragraph 10 of the stipulation of facts, and physically situated in the State of New York at the time of the decedent's death, subject to the Connecticut succession tax?

5. Were the treasury certificates mentioned in Exhibit A, and constituting a part of the "partner's investments" held by the partnership, referred to in paragraph 10 of the foregoing stipulation of facts, and

physically situated in the State of New York at the time of the decedent's death, subject to the Connecticut succession tax?

6. Were the stocks of corporations not organized under the laws of the State of Connecticut, which stocks constituted a part of the "partner's investments" referred to in paragraph 10 of the foregoing stipulation of facts, the certificates of which were physically situated in the State of New York at the time of the decedent's death, subject to the Connecticut succession tax?

7. Were stocks of Connecticut corporations owned by the testator at the time of his death, the certificates of which were physically situated in New York State, subject to the Connecticut succession tax?

8. Were the deposits in banking institutions not situated in the State of Connecticut owned by the decedent at the time of his death, subject to the Connecticut succession tax?

9. Were the proceeds realized by the executors from a policy of life insurance on the life of the testator issued by the Mutual Life Insurance Company of New York, which policy was situated in New York State at the time of the decedent's death, and which policy was payable by its terms to the executors at the death of the insured, subject to the Connecticut succession tax?

10. Were the coins and bank notes (described as cash on hand) belonging to the decedent at the time of his death and situated at that time in the State of New York, subject to the Connecticut succession tax?

11. Is the computation of the Connecticut succession tax made by the defendant as set forth in Exhibit N correct?

12. Is the succession tax imposed by the State of Connecticut on any of the foregoing items of property belonging to the decedent at the time of his death, a

taking of property without due process of law in violation of Amendment XIV of the Constitution of the United States?

13. Is the succession tax imposed by the State of Connecticut on any of the foregoing items of property belonging to the decedent at the time of his death, a failure to give full faith and credit to the laws of the State of New York conferring jurisdiction and power upon said Surrogate's Court in New York County and relating to said transfer, and therefore in violation of Article IV, § 1, of the Constitution of the United States?

14. Were the gifts made by the will of the decedent to educational and charitable corporations in New York exempt from the Connecticut succession tax?

15. Was the gift to trustees for the benefit of the Ethical Culture Society, a charitable and religious corporation organized in New York, exempt from the Connecticut succession tax?

*Abraham L. Gutman* of New York City, and *Charles D. Lockwood,* with whom were *Kenneth Dayton* of New York City, and *Walter N. Maguire,* for the appellants (plaintiffs).

*Lucius F. Robinson* and *Farwell Knapp,* Inheritance Tax Attorney, with whom, on the brief, was *Frank E. Healy,* Attorney General, for the appellee (defendant).

WHEELER, C. J. The questions of law upon which our advice is requested under the facts as stipulated concern the order and decree of the Court of Probate for the district of Stamford approving the succession or inheritance tax as computed by the Tax Commissioner of Connecticut, and ordering the executors to pay the same to the treasurer of the State of Connecticut. Most of the items upon which the tax was imposed were

intangible personal property; as to a few items tangible personal property.

Our present Succession Act, Chapter 190 of the Public Acts of 1923, does not differ in material degree from our earlier Succession Acts; the decisions under the earlier Acts are therefore equally applicable to the Act of 1923. It is "not a tax upon property, but upon the right or privilege of succession to the property of a decedent." *Corbin* v. *Townshend,* 92 Conn. 501, 503, 103 Atl. 647. Our Act specifically includes every beneficial interest of all the personal property of a domiciled decedent whether within or without the State, and claims jurisdiction over all personal property for the purposes of succession to determine its descent or distribution. We interpret our Act and determine the nature of this tax in *Hopkins' Appeal,* 77 Conn. 644, 652, 60 Atl. 657, in these words: "The Act is framed in view of the principle that personal property is bequeathed by will, and is descendible by inheritance, according to the law of the domicil, and that the disposition, distribution of, and succession to, personal property, wherever situated, is to be governed by the laws of that State where the owner had his domicil at the time of his death. . . . The right to lay such a duty is independent of the right to impose a direct tax upon all the property included in the succession, and its amount may properly depend upon a valuation of property included in the succession upon which the State could not impose a direct tax." In further explanation of their nature and origin we say in *Warner* v. *Corbin,* 91 Conn. 532, 536, 100 Atl. 354: "They are not levied, as taxes proper are, either upon property or against persons. They differ from taxes, properly speaking, in that they are exactions in the nature of death duties 'to be paid to the State upon the occasion of death and the consequent transfer of ownership in

the property of the decedent, through the intervening custody and administration of the law, to the persons designated by the law, through the statutes regulating wills, descents and distributions.' "

The justification for the imposition of this tax upon personal property having its *situs* outside the jurisdiction of this State, and thus involving a power of jurisdiction in that State in respect to this tax, we state in *Gallup's Appeal,* 76 Conn. 617, 57 Atl. 699, at page 621: "Personal property is bequeathed by will, and is descendible by inheritance, according to the law of the domicil and not by that of its *situs. Eidman* v. *Martinez,* 184 U. S. 578, 581 [22 Sup. Ct. 515]. It is a settled principle of law that the disposition, distribution of, and succession to, personal property, wherever situated, is to be governed by the laws of that State where the owner had his domicil at the time of his death. *Holcomb* v. *Phelps,* 16 Conn. 127, 132. Under our law it is the duty of the administrator at the place of domicil to inventory and account for all such personal property, and that property is regarded as within the jurisdiction of the State for purposes of administration and distribution. It is true that the actual *situs* of such property in another State involves a power or jurisdiction in that State in respect to it for certain purposes, including the power through process of administration to appropriate so much as may be necessary to the satisfaction of claims of local creditors; but such administration is ancillary to that of the domicil, and the jurisdiction thus exercised is not in denial of, but in aid of, that exercised at the owner's domicil. This principle of law, though founded in international comity, is equally obligatory upon our courts as a legal rule of purely domestic origin. This principle is settled and unquestioned law within this State." See also *Hopkins' Appeal,* 77 Conn. 644, 655, 60 Atl. 657. In

*Bridgeport Trust Co.'s Appeal,* 77 Conn. 657, 662, 60
Atl. 662, we held it to be the duty of the administrator
to inventory personal property without the State
"when its inventory is required for any ordinary pur-
pose of administration, or when required, as it has been
required by statute since 1897, for the special purpose
of enabling the Court of Probate to perform its statu-
tory duty of computing the succession tax in respect to
the estate in settlement." Other cases which assert and
uphold the principle upon which our succession tax
rests are: *Nettleton's Appeal,* 76 Conn. 235, 56 Atl.
565; *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 365,
114 Atl. 104, and *Bridgeport Projectile Co.* v. *Bridge-
port,* 92 Conn. 316, 320, 102 Atl. 644.

We dwell upon these familiar decisions in order to
especially emphasize three features underlying our
Succession Act, and indeed every Succession Act: (1)
the succession to real estate within the State and per-
sonal property everywhere is governed by the law of
the State of the decedent's domicil; (2) the State ex-
ercises this right in virtue of the privilege it accords to
its citizens or its domiciled residents of either disposing
of their property by will, or in the event of intestacy
having it descend in accordance with the statute law of
the State; (3) a succession tax is not an ad valorem
tax, nor to be considered upon the same basis as that
tax; it is a privilege tax, an excise tax, such as a
franchise tax. The decisions and the legal literature
upon this subject not infrequently fail to distinguish
the succession tax as wholly apart from the ad valorem
tax. The taxable *situs* of the former depends for its
jurisdiction upon the domicil of the decedent, the latter
upon the *situs* of the property taxed. The attempt to
rest the jurisdiction of each upon the *situs* of property
taxed requires a departure from the underlying prin-
ciple of the succession tax,—the right to receive from

the decedent, as we hold, or as many jurisdictions hold, the right to transmit from the decedent.

It is not easy to reconcile the decisions of the Supreme Court of the United States upon this point, as well as their application; its latest utterance as applied to a transfer or inheritance tax upon shares of stock is: "The tax here is not upon property, but upon the right of succession to property." *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69, 80, 46 Sup. Ct. 256. And we must assume this still to be the law of that court as applied to intangibles. It follows earlier pronouncements of that court, for example, that of Chief Justice White in *Knowlton* v. *Moore,* 178 U. S. 41, 47, 56, 57, 20 Sup. Ct. 747: "Taxes of this general character are universally deemed to relate, not to property *eo nomine,* but to its passage by will or by descent in cases of intestacy, as distinguished from taxes imposed on property, real or personal as such, because of its ownership and possession. In other words, the public contribution which death duties exact is predicated on the passing of property as the result of death, as distinct from a tax on property disassociated from its transmission or receipt by will, or as the result of intestacy. . . . Laws of this nature . . . rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested. . . . Confusion of thought may arise unless it be always remembered that, fundamentally considered, it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties." See also *United States* v. *Perkins,* 163 U. S. 625, 16 Sup Ct. 1073; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 18 Sup. Ct. 594.

The statutes of over four-fifths of the States purport to impose a transfer or succession tax upon all property of resident decedents, whether tangible or intangible, except realty located outside the State. The decisions of the States upheld these taxes and the decisions of the United States Supreme Court as a rule sustain the State decisions. This was the condition of the law until the decision in *Frick* v. *Pennsylvania,* 268 U. S. 473, 45 Sup. Ct. 603, where it was held that a statute of Pennsylvania providing for a transfer tax on the succession to tangible property which had an actual *situs* in other States was invalid because it contravened the due process clause of the Fourteenth Amendment. Up to this time not only the State of the domicil of the decedent could impose a transfer tax upon the succession to personal property wherever located, but also the State of the *situs* of the property, to the measure of its value. The double taxation resulting has been unduly oppressive and we share in the general feeling of its unfairness. Yet while following and enforcing this decision we cannot but regret its conclusion. Double taxation in this class of cases could have been avoided by holding that the domicil of the decedent was the only jurisdiction which could impose a succession tax upon a decedent's personal property wherever situated, as well as to hold that only the State of the *situs* of personal property could impose such a tax. This would have been antagonistic to decided cases, just as the *Frick* decision is, but it would have preserved intact the theory upon which succession taxes rest. In one particular the opinion seems to overturn a settled and established principle of probate law. It says, at page 491: "Other decisions show that the power to regulate the transmission, administration, and distribution of tangible personal property on the death of the owner rests with the State of its *situs,* and

that the laws of other States have no bearing save as that State expressly or tacitly adopts them—their bearing then being attributable to such adoption and not to any force of their own." State courts are necessarily in constant touch with probate matters and this court has held it to be the law, and we think it to be the general law, "that the disposition, distribution of, and succession to, personal property, wherever situated, is to be governed by the laws of that State where the owner had his domicil at the time of his death." *Gallup's Appeal, supra.* The foreign jurisdiction enforces the will of the decedent domiciled here, or if he died intestate it enforces the distribution provided by our statutes. It does this unless it shall contravene its own policy, and subject to its right to require the payment of the debts due its citizens by the decedent from the property having its *situs* in its jurisdiction.

The succession tax which is questioned in this case is not upon tangible property, as in the *Frick* case, but upon intangible property. The plaintiffs seek to apply by analogy the doctrine of that case. It must be conceded that the *Frick* case did not so rule, but expressly excluded from its ruling intangible property. It said (pp. 492, 494): "The tax which it [Pennsylvania] imposes is not a property tax but one laid on the transfer of property on the death of the owner. . . . Here the tax was imposed on the transfer of tangible personalty having an actual *situs* in other States. . . . Counsel for the State cite and rely on *Blackstone* v. *Miller,* 188 U. S. 189 [23 Sup. Ct. 277] and *Bullen* v. *Wisconsin,* 240 U. S. 625 [36 Sup. Ct. 473]. Both cases relate to intangible personalty, which has been regarded as on a different footing from tangible personalty." In the latest case upon this subject, *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69, 81, 46 Sup. Ct. 256, Chief Justice Taft says: "In the

matter of intangibles, like choses in action, shares of stocks, and bonds, the *situs* of which is with the owner, a transfer tax of course may be properly levied by the State in which he resides." *Bullen* v. *Wisconsin,* 240 U. S. 625, 36 Sup. Ct. 473, was a case where one domiciled in Wisconsin had conveyed to a trust company in Illinois certain bonds, stocks and notes constituting a trust fund, reserving an absolute power of control over the trust. The court held that the State of the domicil of the decedent could impose an inheritance tax upon this trust fund. Mr. Justice Holmes discussed the point involved in these words: "If this fund had passed by intestate succession it would be recognized that by the traditions of our law the property is regarded as a *universitas* the succession to which is incident to the succession to the *persona* of the deceased. As the States where the property is situated, if governed by the common law, generally recognize the law of the domicil as determining the succession, it may be said that, in a practical sense at least, the law of the domicil is needed to establish the inheritance. Therefore the inheritance may be taxed at the place of domicil, whatever the limitations of power over the specific chattels may be, as is especially plain in the case of contracts and stock." He cited in support of this statement *Blackstone* v. *Miller,* 188 U. S. 189, 204, 23 Sup. Ct. 277; *Eidman* v. *Martinez,* 184 U. S. 578, 586, 589, 590, 592, 22 Sup. Ct. 515; *Frothingham* v. *Shaw,* 175 Mass. 59, 55 N. E. 623, and our own case, *Hopkins' Appeal,* 77 Conn. 644, 60 Atl. 657.

Ad valorem taxes upon intangible property, outside the State imposing the tax, as upon a debt, were held in *State Tax on Foreign-held Bonds,* 82 U. S. [15 Wall.] 300, 320, to be taxed only in the State of the domicil of the creditor. "Debts," says Mr. Justice Field, "owing by corporations, like debts owing by indi-

viduals, are not property of the debtors in any sense;
they are obligations of the debtors, and only possess
value in the hands of the creditor. With them they are
property, and in their hands they may be taxed."
Later, in *Blackstone* v. *Miller*, 188 U. S. 189, 23 Sup.
Ct. 277, it was held that money of a nonresident on
deposit in a bank in another State might be taxed in
that State on the principle that the bank was indebted
to the estate of the decedent, and the practical fact
that the State of New York had power over the person
of the debtor. Of this conclusion MR. JUSTICE BEACH
says in *Bridgeport Projectile Co.* v. *Bridgeport*, 92
Conn. 316, 321, 102 Atl. 644: "Carried to its conclu-
sion, this would authorize any credit to be taxed to the
creditor at the domicil of the debtor; but, as pointed
out in the opinion, the result is not to deprive the State
of the creditor's domicil of its undoubted right to lay
a similar tax. It simply subjects the credit to double
taxation." This broad generalization was not ap-
proved in *Buck* v. *Beach*, 206 U. S. 392, 406, 27 Sup.
Ct. 712, where the court said: "We have not had a
case where neither the party assessed nor the debtor
was a resident of or present in the State where the tax
was imposed, and where no business was done therein
by the owner of the notes or his agent relating in any
way to the capital evidenced by the notes assessed for
taxation. We cannot assent to the doctrine that the
mere presence of evidences of debt, such as these notes,
under the circumstances already stated, amounts to the
presence of property within the State." The analysis
of this and other cases referred to by Mr. Justice
Holmes in *Wheeler* v. *New York*, 233 U. S. 434, 34
Sup. Ct. 607, as stated in the concurring opinion was
approved and the broad doctrine announced in the
opinion of Mr. Justice Holmes in that case that notes
found in a foreign jurisdiction were taxable in and of

themselves refuted by five of the Justices—two in the dissenting and three in the concurring opinions. Evidences of debt in the form of notes, mortgages and other securities which are kept in the domicil of the debtor in the hands of an agent for the owner domiciled in another State and interest thereon collected and deposited for use or reinvestment in a local bank by the agent, acquire a *situs* sometimes called a "business *situs*" and may be taxed in the domicil of the debtor. The leading case supporting this doctrine is *New Orleans* v. *Stempel,* 175 U. S. 309, 20 Sup. Ct. 110; *Bristol* v. *Washington County,* 177 U. S. 133, 20 Sup. Ct. 585; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395, 27 Sup. Ct. 499. Under the decisions of the United States Supreme Court, intangibles have one *situs* for an ad valorem tax at the domicil of the creditor or owner, and one where the debt has acquired a *situs* by having the evidences of the debt physically within the domicil of the debtor for longer than a temporary period or used in a business there conducted for the benefit of the creditor. The doctrine of *State Tax on Foreign-held Bonds,* 82 U. S. (15 Wall.) 300, that intangibles have an ad valorem taxable *situs* at the domicil of the creditor, has never been overruled and is the undoubted rule of law of that court. *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Buck* v. *Beach,* 206 U. S. 392, 401, 27 Sup. Ct. 712; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 38 Sup. Ct. 40.

The law of Connecticut is in accord with these decisions. In *Bridgeport Projectile Co.* v. *Bridgeport,* 92 Conn. 316, 102 Atl. 644, we held that a general deposit in a commercial bank in New York by a Connecticut corporation doing business here was taxable in Connecticut upon the intangible right to repayment by check by the bank on demand. Intangibles, therefore, have a taxable *situs* at the domicil of the owner with

reference to an ad valorem tax, and if any analogies may be drawn from this rule applicable to the succession tax they must point to the same rule for each. Law-writers incline to a rule taxing debts whether the tax be an ad valorem tax or a succession tax. Yet in as strong a presentation of the subject as we have seen, the article on "Jurisdiction over Debts," by Professor Carpenter, in 31 Harvard Law Review, 918, we find the author states: "In spite of principle and weighty authority in support of the taxing of debts at the debtor's domicil, it still seems to be generally conceded . . . that they are taxable at the creditor's or owner's domicil."

The appellants are seeking an adjudication from this court that intangibles are taxable at the domicil of the debtor irrespective of whether the debt is there represented by specialties or used in the domicil of the debtor in the business of the creditor-owner. This would be in direct variance to the decisions of the United States Supreme Court as well as of our own State. We are bound to follow these decisions regardless of whether we accede to the correctness of the rule announced by them. If we were not bound to follow these and might decide this case having regard solely to right principle we could reach no other conclusion. Those who advocate the imposition of an inheritance or succession tax upon debts at the domicil of the debtor claim that a debt has a *situs* in the domicil of the debtor because that is the only place where control lies, that is, where the debt can be enforced. Three considerations weigh most strongly against this view: (1) The debt is enforceable wherever the debtor can be reached. This is seen in an action of garnishment in a State other than that of the domicil of the debtor. *Harris* v. *Balk,* 198 U. S. 215, 222, 223, 25 Sup. Ct. 625. The control does not necessarily lie in the State

Silberman v. Blodgett.

of the domicil of the debtor. Debts in and of themselves can have no locality. The right to enforce them in the domicil of the debtor is dependent upon the presence of the debtor. (2) If debts can have a locality it can only be where the parties are to whom they are due. Separate from them they can have no *situs*. (3) As we have said earlier in this opinion, the question of *situs* has no application to a succession tax. That is based upon a different theory, upon the right of transfer which exists because the domicil of the decedent gives to him the right to dispose of his property by will, or if intestate, to have it disposed of according to the law of his domicil. The tax is not upon the decedent's property, hence there is no occasion to determine its *situs*. The right of transfer exists because of the domicil of the decedent.

Then these writers urge that the right to tax is given in return for the service rendered and the only service rendered in the case of the transfer, succession or inheritance tax is in the domicil of the debtor where the tax must be enforced. Again there is a confusion of the ad valorem tax on property and the succession or inheritance tax. The service rendered by the State of the decedent's domicil is the granting to him of the right to dispose of his property, or to have it disposed of by law after his decease. That is the service upon which this tax rests and upon none other. The succession tax is not imposed in return for the protection given to the property or person of the decedent.

The Act granting the right of transfer must be within the control of the State imposing the succession tax. The fallacy in the reasoning vesting jurisdiction in the State having the control of the property with the right of transfer has resulted in the confusion of thought against which Chief Justice White warned in *Knowlton* v. *Moore,* 178 U. S. 41, 20 Sup. Ct. 747.

The rule the executors seek to have established is that intangibles have not only a taxable *situs* independent of the domicil of the creditor, but also at the domicil of the debtor, and further, that this is the only *situs* at which they can be taxed. The proposed rule is unsupported by decision. A succession or inheritance tax imposed in the domicil of the decedent on the right of transfer is a simple and certain tax, and one easily ascertained. If in place of this the tax be imposed in the jurisdiction where the item of property has a *situs* it compels a difficult determination and one which will have to be made in as many different States as the several items of intangible property of the estate are situated, involving a system fruitful in complexity, unfairness, confusion and expense. True, double taxation of the right of transfer, in the domicil of the decedent owner, and in the domicil of the debtor, may result, but in practice it will be far less than in the proposed system of transfer taxation according to *situs*. Nonresident ad valorem taxes on intangible property are being gradually abolished by the enactment of reciprocal statutes designed to avoid double taxation of such kinds of intangible property. The movement will be apt to include, ere long, within its restriction, succession or inheritance taxes. These statutes, with which our own statute, Chapter 239 of the Public Acts of 1925, must be classed, are a recognition of the principle that the only taxable *situs* of intangibles is at the domicil of the decedent owner.

We pass to the consideration of the specific items of intangible property which in this proceeding are claimed to have been taxed under the Connecticut Succession Act in violation of the due process clause of the Fourteenth Amendment. The certificates of stock in the Canada, New York and New Jersey corporations could be subjected to a transfer tax in the jurisdictions

of their incorporation (*Frick* v. *Pennsylvania*, 268 U. S. 473, 497, 45 Sup. Ct. 603; *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, 80, 46 Sup. Ct. 256) and likewise subject to a transfer tax in the domicil of the decedent. Similar taxes were sustained in *Gallup's Appeal*, 76 Conn. 617, 57 Atl. 699; *Hopkins' Appeal*, 77 Conn. 644, 60 Atl. 657; *Bullen* v. *Wisconsin*, 240 U. S. 625, 36 Sup. Ct. 473; *Rhode Island Hospital Trust Co.* v. *Doughton, supra,* at page 80; *Frothingham* v. *Shaw,* 175 Mass. 59, 55 N. E. 623.

The largest item in controversy is that arising from the succession tax computed upon decedent's interest in a partnership located and doing business in New York City. The partnership was organized under the Limited Partnership Act of New York. It was subject to the law of New York in practically the same way a corporation organized under that law would have been subject. The stockholder is not the owner of the property of the corporation; *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69, 46 Sup. Ct. 256; no more is the partner the owner of the property of the limited partnership. The interest of the decedent in this partnership must be determined by the law of New York. This Partnership Act was, with inconsequent differences, identical with the Uniform Partnership Law. Under § 52 of the New York Act the partner's interest is personal property. And it is immaterial of what the partnership assets consist, whether realty or tangible or intangible personalty. Under § 51, the partner is a co-owner with his partners of the partnership property, holding as a tenant in partnership. His interest has been defined as a tenancy in partnership. It is not subject to dower, curtesy, or allowance to widows, heirs, or next of kin. Under § 73, where the partner dies and the partnership continues the business, his legal representatives may have

the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the partnership with interest. A bequest of the interest of a decedent of New York in a joint stock association is subject to a transfer tax under Chapter 215 of the Laws of New York of 1891; a similar rule must subject the share of a partner who is domiciled in New York in a limited partnership. From this it is clear that the decedent's interest in this partnership under the New York law is a right to a share in the partnership assets after its liabilities have been deducted and a balance struck. The interest is thus a chose in action, hence intangible personal property. While we have not as yet adopted the Uniform Partnership Act, our law reaches the same end. *Filley* v. *Phelps,* 18 Conn. 294; *Canfield* v. *Hard,* 6 Conn. 180; *Witter* v. *Richards,* 10 Conn. 37. Gleason & Otis on Inheritance Taxation (3d Ed.) p. 324, say: "The interest of copartners is in the surplus after payment of debts, and is therefore intangible, even if the copartnership owns real estate." See also *Darrow* v. *Calkins,* 154 N. Y. 503, 49 N. E. 61; *Russell* v. *McCall,* 141 N. Y. 437, 36 N. E. 498. Gleason & Otis also say (p. 325): The interest of a non-resident in a New York partnership is taxable under the present New York statute, Chapter 664 of the Laws of 1915. " 'The partner is to be regarded in such cases as holding only an interest in the stock or capital of the partnership, which is *personal property.* If the business of the firm be in operation or there be liabilities outstanding against it, the partners have not an interest in its lands, or other assets that may be regarded as property; their interest is in the stock of the firm, whatever upon final settlement may be due them.' "

The limited partnership is classed with corporations in a requirement of reports and franchise taxes.

*Whitney Realty Co.* v. *Secretary of State,* 228 Mich. 96, 199 N. W. 669; *Wharf* v. *Wharf,* 306 Ill. 79, 137 N. E. 446. Since the decedent's interest in the New York partnership was intangible personal property, it was properly included within the computation under the Connecticut succession tax. That New York also subjected this interest to a transfer tax does not affect the validity of the Connecticut tax. Both, though resulting in double taxation, may be valid. *Blackstone* v. *Miller, supra.* Plaintiffs argue that though this interest was intangible, it was of a peculiar nature making it equivalent to tangible property. We find no peculiarity in this interest, nothing approaching tangible property. Plaintiffs' claim is that since the decedent's interest was inseparably connected with the interests of the other partners in the partnership, and that derived its protection from the laws of New York, and the enforcement of this interest was dependent upon the laws of New York, it is in precisely the situation of the furniture and pictures in the *Frick* case. The similitude does not exist unless the decedent's interest in the partnership can be held to be tangible personal property. That cannot be done.

The bonds which were in New York and had long been there were United States bonds and treasury certificates, except two items of mortgage bonds, appraised at $521.67, due the decedent either from residents or corporations of Connecticut. Unquestionably Connecticut could lay a succession tax upon these mortgage bonds just as it could upon the certificate of stock in a corporation of Connecticut though the certificate had been for a long time in another jurisdiction. *Bullen* v. *Wisconsin,* 240 U. S. 625, 631, 36 Sup. Ct. 473; *State Tax on Foreign-held Bonds,* 82 U. S. (15 Wall.) 300. The United States bonds and treasury certificates are, strictly speaking, mere evidences of

debts and intangible personalty. But State and municipal bonds which pass from hand to hand on delivery are treated as a species of tangible personal property and have come to be recognized as such. In *State Tax on Foreign-held Bonds,* 82 U. S. (15 Wall.) 300, 323, 324, it is said: "It is undoubtedly true that the actual *situs* of personal property which has a visible and tangible existence, and not the domicil of its owner, will, in many cases, determine the State in which it may be taxed. The same thing is true of public securities consisting of State bonds and bonds of municipal bodies, and circulating notes of banking institutions; the former, by general usage, have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicil of the owner; the latter are treated and pass as money wherever they are." This doctrine is cited with approval in *New Orleans* v. *Stempel,* 175 U. S. 309, 321, 20 Sup. Ct. 110. In *Westinghouse Electric & Mfg. Co.* v. *Los Angeles County,* 188 Cal. 491, 494, 205 Pac. 1076, it is stated: "Municipal bonds and securities of that class, which are recognized as a commodity on the market and pass from hand to hand on delivery, are commonly treated as a species of tangible property in themselves, and, on this ground, have been frequently held taxable as property wherever actually located." State bonds of California were held to be taxable as personal property of a nonresident in *People* v. *Home Ins. Co.,* 29 Cal. 533. The same considerations which converted State and municipal securities into tangible personal property necessarily operate to convert United States bonds and treasury certificates into tangible personal property. As such under the *Frick* case they are subject to a transfer tax in New York, where they were found, and nowhere else. Likewise the cash in New York was subject to a transfer tax there and

nowhere else. The proceeds of the life insurance policy, physically in New York, were not subject to the transfer tax of New York. *Matter of Gordon,* 186 N. Y. 471, 79 N. E. 722; Inheritance Taxes, Blakemore & Bancroft (1914 Ed.) § 218. The proceeds were subject to the succession tax of Connecticut, for the right to them was vested in the decedent's estate as the creditor of the insurance company. The savings account in a bank in New York was a debt owed the decedent by the bank and subject to our succession or inheritance tax upon the same principle as was the interest in the partnership. *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 38 Sup. Ct. 40; *Bridgeport Projectile Co.* v. *Bridgeport,* 92 Conn. 316, 102 Atl. 644.

The executors claim that the bequests to New York charitable and educational corporations should under Connecticut law be exempt from our succession tax. No corporations of these classes are exempt under our statute then in force, § 1 of Chapter 190 of the Public Acts of 1923, unless they are located within our State and receive State aid. The corporations named in these bequests are located outside our State and are not recipients of State aid. Subsequently, in Chapter 47 of the Public Acts of 1925, our law was changed to include within its exemption bequests to corporations wherever situated. The decisions of this court upon which the executors rely have no application to the 1923 Act.

The net taxable estate upon which the computation of the Tax Commissioner should be made is reached by deducting from the net taxable estate $2,400,694.79, the value of the United States bonds and treasury certificates $615,121.17, the cash in New York $287.48, together with the $19,166.04, being the transfer tax paid to the State of New York upon the stocks of

corporations and the limited partnership of William Openhym & Sons, organized under the laws of the State of New York and deductible under the authority of *Frick* v. *Pennsylvania, supra,* at page 497, provided it had not already been deducted by the Tax Commissioner in fixing the net taxable estate at $2,400,694.79. Otherwise the computation as made by the Tax Commissioner is correct.

The Superior Court is advised that the questions upon which the advice of this court is desired, we answer as follows: 2, 6, 7, 8, 9, yes; 1, 4, 5, 10, 13, 14 and 15, no; 3, all; and 12, yes as to the items contained in 4, 5 and 10.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.