CHARLES D. LOCKWOOD ET AL., EXECUTORS, *vs.* WILLIAM H. BLODGETT, TAX COMMISSIONER.

Third Judicial District, Bridgeport, April Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

The tax imposed by § 1190 of the General Statutes on that portion of a decedent's estate upon which no town or city tax has been assessed, or State tax paid, during the year preceding his death, is a penalty in the nature of a tax for omission to list property for taxation.

This penalty tax can only be imposed upon property which was subject to the taxing power of the State, or its subdivisions, during the decedent's lifetime.

Lockwood *v.* Blodgett.

For purposes of taxation a debt is property at the residence or domicil of the creditor; and under the provision of § 1184 of the General Statutes that "all notes, bonds and stocks, not issued by the United States, moneys, credits, choses in action . . . belonging to any resident in this State, shall be set in his list in the town where he resides," a bond secured by a mortgage upon real estate in New York, executed by a resident of that State and owned by a person domiciled in Connecticut, is taxable in this State, and, if the owner fails to list it for taxation during the year preceding his death, a penalty tax may be assessed against it.

The rule that public securities are tangible property and subject to taxation wherever found, irrespective of the domicil of the owner, does not extend to private specialties, such as mortgage bonds or other negotiable paper.

The fact that intangible property is taxed in a jurisdiction other than that of the owner's domicil does not prevent the latter from also taxing it.

If the owner of intangibles uses them as a part of a business conducted by him with more or less regularity through an agent in a jurisdiction other than that of his domicil, they may there acquire a "business *situs*" for purposes of taxation; but where, as in the present case, a resident of Connecticut owning bonds secured by mortgages upon real estate in New York, places them in the custody of his attorneys in that State merely for the collection and remittance of payments of interest and principal, but without delegating to them authority to renew the loans at maturity or to invest or reinvest any of the proceeds, the bonds do not acquire a "business *situs*" in New York.

The limitation of the Fourteenth Amendment to the Constitution of the United States upon the taxing power of a State has no application to intangible property, even though it has acquired a "business *situs*" in another State and is there taxable.

Section 1196 of the General Statutes provides that "the list of any person need not include any money in any savings bank or trust company or any other property situated in another State, when it shall be made satisfactorily to appear to the assessors that the same is fully assessed and taxed in such State, to the same extent as other like property owned by any citizen of such State; but the provisions of this act shall not apply to moneys loaned by residents of this State to any person out of this State as money at interest." *Held* that bonds owned by a resident of this State, secured by mortgages upon real estate in another State, are not exempt under this statute.

Argued April 20th—decided August 3d, 1927.

APPEAL by the plaintiffs from the computation of the penalty tax claimed to be due from the estate of George Luke, late of Greenwich, deceased, taken to the Superior Court in Fairfield County and reserved by the court (*Dickenson, J.*), upon an agreed statement of facts, for the advice of this court.

The parties stipulated that the facts were as follows: George Luke died on September 9th, 1925, having been domiciled at Greenwich for at least six years prior to his death, and leaving a will, which was duly probated, in which the appellants were named as executors and duly qualified as such. In the inventory were three bonds and mortgages on real estate in Brooklyn, New York; those on 500 Howard Avenue were dated November 22d, 1908, and made for $4,500, and were inventoried at this value; those on 502 Howard Avenue were dated November 27th, 1908, and originally made for $4,750, but had been reduced to $4,500 and were inventoried at this value; and those on 1910 Bergen Street were dated May 1st, 1903, and made for $3,750, and assigned to George Luke on May 20th, 1912, and were inventoried at this value. There was also a bond and mortgage for $10,000, on 232 East Ninety-seventh Street, New York City, which were dated February 18th, 1912, and assigned to George Luke December 15th, 1921, and were inventoried at this value. The decedent owned the first two of the above bonds and mortgages from the dates of their execution, and the last two from the dates of assignment up to the date of his death. The first three of the above mentioned bonds and mortgages were in the hands of Charles Philips, attorney at law, of New York City, and the fourth of the bonds and mortgages were in the hands of Francis B. Sanford, attorney at law, of New York City. These attorneys collected in New York City, interest and instalments on principal and remitted the

same to the decedent Luke in Connecticut. These mortgages were duly recorded in the land records of the counties in which the lands described therein were situated. The decedent, during his lifetime, never listed any of the foregoing bonds and mortgages in his tax lists filed in Greenwich, and never paid a tax thereon to the State of Connecticut, and no assessment was ever levied thereon.

On December 31st, 1925, the Tax Commissioner of Connecticut assessed a tax of $2,050 on untaxed property of decedent, under the provisions of the statutes in the footnote, which included, among other property, the four described bonds and mortgages. At no time during the five years next preceding the death of the decedent were these mortgage bonds and deeds ever within this State, but were during all of his time within the State of New York. The mortgagors named in these mortgages were and are nonresidents of Connecticut. On March 9th, 1926, the executors duly appealed from this assessment to the Superior Court.

The parties represent that the questions of law reserved for the advice of this court are: (1) Is the tax on untaxed property, so far as it covers these four

The pertinent sections of the General Statutes are as follows:

General Statutes, § 1189, as amended by Chapter 50 of the Public Acts of 1919. The executor of every will and the administrator of every estate, except as hereinafter provided, at the time of filing the inventory and appraisal of such estate with the Court of Probate, shall, in addition thereto, file an affidavit in duplicate setting forth the items included in such inventory on which a tax has been assessed by any town or city during the last completed taxing period, or paid to the State during the year next preceding the date of the death of the decedent, the assessed value of each item and the place of the assessment or payment of the tax on each item, and the judge of probate shall send to the tax commissioner with the copy of each inventory required to be sent to said commissioner, a copy of such affidavit. . . .

General Statutes, § 1190. All taxable property of any estate

Lockwood *v.* Blodgett.

mortgages, a taking of property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States? (2) Were the bonds and mortgages subject to taxation by the Town of Greenwich or by the State of Connecticut during the lifetime of the decedent? (3) Is the computation of the tax on untaxed property of the decedent correct?

*Walter N. Maguire,* with whom was *Wilfred P. Forrest,* for the appellants (plaintiffs).

*Lucius F. Robinson* and *Farwell Knapp,* Inheritance Tax Attorney, with whom, on the brief, was *Benjamin W. Alling,* Attorney General, for the appellee (defendant).

WHEELER, C. J.   We had occasion to pass upon the validity of the sections of the General Statutes under which the tax in question was laid in *Bankers Trust Co. v. Blodgett,* 96 Conn. 361, 114 Atl. 104. We said: "The pecuniary liability imposed . . . is a penalty in the nature of a tax for an omission to list property for taxation. . . . The obvious legislative purpose is to

upon which no town or city tax has been assessed as provided in section 1189 or upon which no tax has been paid to the state during the year preceding the date of the death of the decedent, shall be liable to a tax of two per centum per annum on the appraised inventory value of such property for the five years next preceding the date of the death of such decedent, *provided,* the executor or administrator of any estate may, by furnishing evidence to the satisfaction of the tax commissioner that a state, town or city tax has been paid on any of such property for a portion of said five years or that the ownership of such property has not been in the decedent for a portion of said period, obtain a proportionate deduction from the tax hereby imposed, and provided, the administrator or executor of such estate may furnish evidence to the tax commissioner that the appraised value of the estate is not in excess of two thousand dollars and a portion of the same passes

Lockwood *v.* Blodgett.

compel estates to pay to the State a sum which shall approximately equal the taxes which property of the estate has escaped paying while in the hands of the decedent. . . . Under this section, property which has not been subject to a town or city or State tax during the year preceding the death of the decedent, is liable to a tax of two per centum of its appraised inventory value for the five years next preceding the date of the death of decedent, provided that a proportionate reduction of this tax may be had by proof that any part of the tax has been paid, or that the decedent did not own any of this property during this period." The State cannot assess this penalty tax with respect to property of a decedent which was not taxable locally during his lifetime, or was not within the power of the State or its subdivisions to tax. The "penalty tax" can only be imposed upon the taxable property of an estate upon which no town or city tax has been assessed, so that the underlying question for decision is, whether Connecticut or any of its subdivisions, had the power to tax these bonds and mortgages prior to the decedent's death.

General Statutes, § 1184, provides: "All notes, bonds and stocks, not issued by the United States, moneys, credits, choses in action, . . . belonging to any resident

by will or pursuant to the provisions of the statutes relating to the distribution of intestate estates, to the widow or minor children, as provided in section 1189.

General Statutes, § 1192. Any executor, administrator or representative of such an estate aggrieved by the action of the tax commissioner in determining such tax, if unable to agree with the tax commissioner upon the amount of such tax as provided in section 1190, may, within ninety days from the time of the filing by the tax commissioner of such statement or corrected statement with the judge of probate, make application in the nature of an appeal therefrom to the Superior Court of the county in which such probate court is located which shall be accompanied by a citation to said tax commissioner to appear before such court. . . .

in this State, shall be set in his list in the town where he resides at their then actual valuation." The statute has been in existence substantially in this form for nearly a century. In its earlier form it specifically provided that debts secured by mortgage must be set in the list of the owner. The present form of the statute includes in its general terms debts secured by mortgage. The statute was intended to cover all classes of intangible property, and that construction has been reflected in the practice in this jurisdiction and in the decisions of this court. We are asked to determine whether our statute providing for the taxation in Connecticut of bonds and mortgages secured by real estate in New York which are executed by a resident in New York and are owned by one domiciled in Connecticut is a valid exercise of the taxing powers. A like question arose in *Kirtland* v. *Hotchkiss*, 42 Conn. 426; the bonds and mortgages were executed in Illinois on land there and owned by a resident here. In this case the bonds and mortgages were in New York, in that case in Illinois. We held that the owner of these securities had a right to receive the sum of money named, with interest or damages for its detention, and that the debtor was under an obligation to pay this demand. We disposed of the question of the *situs* of this debt in these words (p. 438): "It seems to us therefore that the appropriate place to tax money at interest, is where the creditor resides, and that for that purpose it may with propriety be said to be located with the creditor." The case was affirmed in 100 U. S. 491, upon the theory announced by this court. Mr. Justice Harlan, saying (p. 498): "The bond, wherever actually held or deposited, is only evidence of the debt, and if destroyed, the debt—the right to demand payment of the money loaned, with the stipulated interest —remains. Nor is the debt, for the purposes of taxation,

affected by the fact that it is secured by mortgage upon real estate situated in Illinois.".

We subsequently held, in *Bridgeport Projectile Co.* v. *Bridgeport,* 92 Conn. 316, 102 Atl. 644, that a general deposit in a commercial bank in New York by a Connecticut corporation engaged in business here was taxable here upon the right of the corporation to draw on the deposit at its discretion. We said: "The undoubted rule is that, for the purposes of taxation, a debt is property at the residence or domicil of the creditor." See also *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 58, 38 Sup. Ct. 40; *Silberman* v. *Blodgett,* 105 Conn. 192, 134 Atl. 778. The case of *Kirtland* v. *Hotchkiss,* 100 U. S. 491, has been cited with approval many times by the United States Supreme Court and never been directly disapproved of in any particular, so far as we have ascertained. It is the settled law of this jurisdiction that intangibles have a taxable *situs* at the domicil of the owner. In *State Tax on Foreign-held Bonds,* 82 U. S. (15 Wall.) 300, at page 320, Mr. Justice Field said: "Debts owing by corporations, like debts owing by individuals, are not property of the debtors . . . and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed." In *Buck* v. *Beach,* 206 U. S. 392, 401, 27 Sup. Ct. 712, the court, by Mr. Justice Peckham, reiterates this rule: "Generally speaking, intangible property in the nature of a debt may be regarded, for the purposes of taxation, as situated at the domicil of the creditor and within the jurisdiction of the State where he has such domicil. It is property within that State. . . . *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 498." The appellants seek to avoid the effect of that rule by having us adopt the rule that "a bond and mortgage are either tangible property, or sufficiently of that nature, so as to be sub-

ject to the rule for the taxation of tangible personal property, that is, where physically located. They rely in support of this claimed rule upon our holding in *Silberman* v. *Blodgett,* 105 Conn. 192, 134 Atl. 778, in accordance with the holding in *State Tax on Foreign-held Bonds,* 82 U. S. (15 Wall.) 300, where, at pages 323 and 324, the court says: "It is undoubtedly true that the actual *situs* of personal property which has a visible and tangible existence, and not the domicile of its owner, will, in many cases, determine the State in which it may be taxed. The same thing is true of public securities consisting of State bonds and bonds of municipal bodies, and circulating notes of banking institutions; the former, by general usage, have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicile of the owner; the latter are treated and pass as money wherever they are." The same reasoning, the appellants urge, applies to real-estate mortgages as to public securities.

The appellants assert that our holding in *Silberman* v. *Blodgett, supra,* goes further than the United States Supreme Court has gone. We find many instances in which that court has accepted the principle quoted from the opinion in *State Tax on Foreign-held Bonds, supra,* and in no instance has it ever disapproved of it. We cite some of these. In *New Orleans* v. *Stempel,* 175 U. S. 309, 322, 20 Sup. Ct. 110, Mr. Justice Brewer, twenty-five years later, wrote: "It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicil of the owner." In *Buck* v. *Beach,* 206 U. S. 392, 407, 27 Sup. Ct. 712, Mr. Justice Peckham states: "Although public securities, consisting of State bonds and bonds of municipal bodies, and circulating notes of banking institutions

have sometimes been treated as property in the place where found, though removed from the domicil of the owner, *State Tax on Foreign-held Bonds*, 15 Wall. [82 U. S.] 300, 324, it has not been held in this court that simple contract debts, though evidenced by promissory notes, can under the facts herein stated be treated as property and taxed in the State where the notes may be found." In his dissenting opinion Mr. Justice Day quotes with approval that which we have just quoted from *New Orleans* v. *Stempel*. In *Wheeler* v. *New York*, 233 U. S. 434, 439, 34 Sup. Ct. 670, Mr. Justice Holmes says: "As to authority, it has been asserted or implied again and again that the States had the power to deal with negotiable paper on the footing of *situs;*" and then he quotes the part we have already quoted from *New Orleans* v. *Stempel*. In the dissenting opinion Mr. Justice McKenna quotes a part of what was said in *Buck* v. *Beach* as to the physical presence of notes not constituting property; "and," he continues (p. 445), "it was pointed out that the prior cases, which were specifically reviewed, gave no support to the rejected doctrine. It was not overlooked that certain specialty debts, State and municipal bonds and circulating notes of banking institutions, have sometimes been treated as property where they were found though removed from the domicile of the owner." The reasons which impelled the holding of public securities to be of the nature of tangible personal property are not present in the case of mortgages or private negotiable securities. These have no public recognition as a species of tangible personal property, and in the case of mortgages they do not pass from hand to hand on delivery. In addition, the authority of the Supreme Court of the United States is against the extension of this doctrine to specialties of a private character. The statement of Mr. Justice

Brewer in *New Orleans* v. *Stempel, supra,* at page 322—that "it is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicile of the owner; . . . Notes and mortgages are of the same nature; and while they may not have become so generally recognized as tangible personal property, yet they have such a concrete form that we see no reason why a State may not declare that if found within its limits they shall be subject to taxation"—if not obiter as to notes and mortgages, is certainly not the law of that court; it has been distinctly disapproved of, and never subsequently sanctioned by it.

We rest upon the oft-cited passage from the notable opinion of Mr. Justice Field in *State Tax on Foreign-held Bonds, supra,* pp. 320, 324: "To call debts property of the debtors is simply to misuse terms. . . . Their debts can have no locality separate from the parties to whom they are due. . . . But other personal property, consisting of bonds, mortgages, and debts generally, has no *situs* independent of the domicile of the owner, and certainly can have none where the instruments, as in the present case, constituting the evidences of debt, are not separated from the possession of the owners." Counsel for the appellants treat this case as a practically overruled case. They find in one opinion a statement that this case has been cut down to its true basis by subsequent opinions. We think the opinion in its main theme is as sound authority as when written and that it has always been regarded by the courts as a leading case. The constant citation of this case by its own court, as well as this language from Mr. Justice Peckham's opinion in *Buck* v. *Beach,* 206 U. S. 392, 408, 27 Sup. Ct. 712, confirms our opinion of its present authority: "Although the language of the opinion in the case of *State Tax on Foreign-held*

*Bonds, supra,* has been somewhat restricted so far as regards the character of the interest of the mortgagee in the land mortgaged, *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421, 428, 18 Sup. Ct. 392, the principle upon which the case itself was decided has not been otherwise shaken by the later cases."

In *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 58, 59, 38 Sup. Ct. 40, we find the court, speaking by Mr. Justice Holmes, says: "It is argued that in a later case this court has held the power of taxation not to extend to chattels permanently situated outside the jurisdiction although the owner was within it; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 26 Sup. Ct. 36; and that the power ought equally to be denied as to debts depending for their validity and enforcement upon a jurisdiction other than that levying the tax. But this court has not attempted to press the principle so far and there is opposed to it the long-established practice of considering the debts due to a man in determining his wealth at his domicile for the purposes of this sort of tax." It was broadly stated in the course of the opinion in *New Orleans* v. *Stempel, supra,* that "negotiable paper had such tangibility as to be of itself a taxable entity." Mr. Justice McKenna, in his concurring opinion in *Wheeler* v. *New York,* 233 U. S. 434, 442, 34 Sup. Ct. 670, pointed out that the facts of the case did not call for it; and, we may add, the matter decided did not call for it. Mr. Justice Holmes had indicated in one or more earlier opinions that he regarded a debt as having a *situs* in the jurisdiction of the debtor for purposes of taxation, and that whichever jurisdiction has the paper has the debt, that is, possesses the property. In *Wheeler* v. *New York* he definitely incorporated this proposition in the opinion of the court and gave his interpretation of *Buck* v. *Beach.* His opinion

was concurred in by three justices. Mr. Justice Mc-
Kenna concurred in the result, but dissented from the
proposition, "that the States have power to deal 'with
negotiable paper on the footing of *situs*,' that is, to
regard such paper so far concrete and tangible as to be
of itself a subject of taxation, irrespective of the domi-
cile of its owner or, I add, the locality of the debt
which it represents." He analyzed at length the opin-
ions upon which the opinion of the court relied. In his
opinion one of the justices concurred, while three dis-
sented from the majority opinion, but took occasion to
express in their dissent the fact that they concurred in
Mr. Justice McKenna's analysis of *Buck* v. *Beach* and
the other cases. We take it that this is a concurrence
in this quotation from *Buck* v. *Beach, supra,* p. 406:
"We cannot assent to the doctrine that the mere pres-
ence of evidences of debt, such as these notes, under the
circumstances already stated, amounts to the presence
of property within the State." The majority of the
court were thus not in accord with Mr. Justice Holmes
upon the principal ground of his opinion.

But whether or not the mere presence of specialties
or negotiable private paper in a jurisdiction other than
that of its owner gives that jurisdiction the right to
tax it, this will not prevent the jurisdiction of the
owner also taxing it, as the authorities we shall cite
show, or unless it is otherwise provided by statute.
Since the *State Tax on Foreign-held Bonds* decision,
which held that intangibles have no *situs* independ-
ent of the domicil of the owner, a number of decisions
have established the "business *situs*" theory, which
gives the intangible a *situs* in a jurisdiction other
than that of its owner when it is a part of a business
which the owner is there conducting, or the intangible
is being so used as to give it a business *situs* there.
Cooley on Taxation, Vol. 2 (4th Ed.) § 465, says:

"What will constitute a business *situs* is not susceptible of precise definition." It means "a *situs* in another State where a nonresident is doing business through an agent, manager or the like, in which business and as a part thereof business credits, such as open accounts, notes, mortgages, deposits in banks, etc., are used and come within the protection of the State; . . . but the most common application of the rule is where a resident of one State has an agent in another State who loans money of the nonresident, more or less as a regular business, and takes care of the collections and reinvestments, in which case the notes, mortgages, etc., taken by the agent are held to be subject to taxation although the owner is a nonresident." The taxation of intangibles in a jurisdiction not that of the owner has frequently been sustained upon the "business *situs*" theory. *Bristol* v. *Washington County,* 177 U. S. 133, 20 Sup. Ct. 585; *State Board of Assessors* v. *Comptoir National D'Escompte,* 191 U. S. 388, 24 Sup. Ct. 109; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395, 27 Sup. Ct. 499; *Liverpool, London & Globe Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346, 354, 31 Sup Ct. 550; *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Commission,* 266 U. S. 271, 45 Sup. Ct. 82; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 58, 38 Sup. Ct. 40. The analysis of the first three of these cases by Mr. Justice McKenna, which was approved by the majority of the court, will be found in *Wheeler* v. *New York,* 233 U. S. 442, 443, 34 Sup. Ct. 607.

The mere presence of the specialty or negotiable paper in the jurisdiction other than that of the owner will not be a factor in determining the right of that jurisdiction to tax the intangible. Nor will the fact that it was in the hands of an agent as custodian, or for the purpose of collecting the interest thereon, give

Lockwood *v.* Blodgett.

it a business *situs* there.  But if it be in the hands of "an agent of the owner for the purpose of collection or renewal, with a view to new loans and carrying on such transactions as a permanent business," it will have a business *situs* while in the hands of the agent for these purposes.  *State Board of Assessors* v. *Comptoir National D'Escompte,* 191 U. S. 388, 404, 24 Sup. Ct. 109; *Bridgeport Projectile Co.* v. *Bridgeport,* 92 Conn. 316, 102 Atl. 644; *National Leather Co.* v. *Commonwealth,* 256 Mass. 419, 152 N. E. 916.  Cooley on Taxation, Vol. 2 (4th Ed.) § 458, says: "A credit does not lose its *situs* for taxation in the State where the creditor is domiciled merely because it is secured by a mortgage upon real property in another State.  Mortgages and mortgage debts are taxable at the domicile of the mortgagee, and are not subject to taxation in another State where the mortgagor is domiciled nor where the mortgaged land is situated—barring the exception in case the mortgage has obtained a 'business *situs*'— except that a State may subject a nonresident's interest in a mortgage to taxation as an interest . . . taxable in the State where the mortgaged land is located."  Except in the method indicated, intangibles are only taxable at the domicil of the owner.

The stipulated facts show that the bonds and mortgages of Mr. Luke were in the hands of attorneys in New York, who merely collected the interest and instalments on the principal and remitted the same to him.  This did not give them a business *situs* in New York for taxation.  If the attorneys had had authority to invest and reinvest the principal in addition to the authority they in fact had, the bonds and mortgages would have had a "business *situs*" in New York; they would have constituted a part of a business.  Intangibles which have a business *situs* in a jurisdiction other than that of the owner and so may be subject to tax

there, remain subject to taxation in the jurisdiction
where the owner is domiciled. *Fidelity & Columbia
Trust Co.* v. *Louisville,* 245 U. S. 54, 38 Sup. Ct. 40.

The second point advanced by the appellants—that
even if these bonds and mortgages are held to be in-
tangible personal property, their taxation by Connecti-
cut is a taking of property without due process of
law—is disposed of in the recent case of *Cream of
Wheat Co.* v. *Grand Forks,* 253 U. S. 325, 329, 40 Sup.
Ct. 558, in the court's declaration, "Nor has it [the
Fourteenth Amendment] any application to intangible
property, *Union Refrigerator Transit Co.* v. *Kentucky,*
199 U. S., 194, 205, 26 Sup. Ct. 36; *Hawley* v. *Malden,*
232 U. S. 1, 11, 34 Sup. Ct. 201; [*Citizens National
Bank* v. *Durr,* 257 U. S. 99, 109, 42 Sup. Ct. 15], even
though the property is also taxable in another State
by virtue of having acquired a 'business *situs*' there.
*Fidelity and Columbia Trust Co.* v. *Louisville,"* supra.

The third point discussed by the appellants—that
Connecticut had no power to impose an ad valorem
tax on these bonds and mortgages during the lifetime
of this decedent, since the tax commissioner was with-
out power to impose this penalty tax unless the prop-
erty it sought to tax was taxable by the State of
Connecticut or by the town of Greenwich, in which
the decedent resided during his lifetime—has neces-
sarily been determined in our consideration of point
one. The bonds and mortgages were intangible prop-
erty and their *situs* the domicil of the owner. The
appellants' argument rests upon the proposition that
these bonds and mortgages are tangible personal prop-
erty and taxable where physically situated. To reach
this conclusion, *Kirtland* v. *Hotchkiss, supra,* must be
overruled, specialities as such held to be tangible per-
sonal property, and the doctrine of *Union Refrigera-
tor Transit Co.* v. *Kentucky, supra,* and *Frick* v. *Penn-*

*sylvania,* 268 U. S. 473, 45 Sup. Ct. 603, applied to this kind of property, thus making the place where these bonds and mortgages happened to be the sole *situs* for their taxation. We agree with Mr. Justice Holmes' view, that the Supreme Court of the United States "has not attempted to press the principle so far."

The limitation of the taxation of specialties or instruments evidencing the existence of the indebtedness to the place where they are physically located, without reference to whether they are used there in the conduct of a business, "is unsound both in law and economics."

The last point urged by the appellants is that a statute of Connecticut has exempted these bonds and mortgages from ad valorem taxation. General Statutes, § 1184, under whose authority the State imposed this tax, the appellants claim is limited in the imposition of the tax by § 1196 as amended by Chapter 149 of the Public Acts of 1923, which reads: "The list of any person need not include any money in any savings bank or in the savings department of any bank or trust company or any other property situated in another State, when it shall be made satisfactorily to appear to the assessors that the same is fully assessed and taxed in such State, to the same extent as other like property owned by any citizen of such State; but the provisions of this act shall not apply to moneys loaned by residents of this State to any person out of this State, as money at interest." There is nothing in this record which has made it, or ought to have made it, satisfactorily to appear to the assessors of Greenwich that these bonds and mortgages were fully assessed and taxed in New York, assuming these securities to be situated in that State. The section expressly exempts from its provisions "moneys loaned by residents of this State to any person out of this State, as money

at interest," which covers the case of these bonds and mortgages. Finally, the limitation of the statute only applies to "any other property situated in another State" such as it has before described, money on deposit. The bonds and mortgages do not fall within that class of property, and furthermore have no *situs* in New York. The bonds and mortgages were not exempt from taxation under § 1196.

We answer question one, no; and questions two and three, yes.

In this opinion the other judges concurred.

