MANUFACTURERS TRUST COMPANY ET AL., EXECUTORS (ESTATE OF LIZZIE T. SMITH) *vs.* WILLIAM H. HACKETT, TAX COMMISSIONER.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 6th, 1933—decided February 6th, 1934.

*Abraham Wofsey* and *Michael Wofsey,* for the plaintiffs.

*Howard E. Hausman,* with whom was *Farwell Knapp,* and, on the brief, *Warren B. Burrows,* Attorney-General, for the defendant.

*Margaret P. Camp,* with whom was *Mortimer H. Camp, amicus curiae.*

HINMAN, J. This application is brought, under § 1405 of the General Statutes, by the executors of the will of Lizzie T. Smith who died testate on March 14th, 1931, a resident of and domiciled in Stamford, Connecticut, since 1919. By her will the Chatham Phoenix National Bank and George W. Brown, both of New York City, were appointed executors. The bank subsequently merged with the Manufacturers Trust Company of New York, and the latter was substituted as a party plaintiff. The inventory filed by the executors listed, among other assets, four mortgage bonds owned by the decedent and secured by real estate situated in New York, aggregating $47,500, which, with other securities belonging to the decedent, were and had been throughout the period of the residence of the decedent in Connecticut physically in the State of New York in the hands of an agent. These mortgages had never been listed by the decedent in her tax lists filed in Stamford, and no tax was ever paid by her upon these mortgages either to the town of Stamford or to the State of Connecticut. On June 5th, 1933, the tax commissioner assessed a tax on these mortgages in the amount of $3600, from which assessment this appeal is taken. Other facts stipulated for the purposes of the reservation will be stated hereafter. The questions upon which advice is desired are: (1) Is the tax on untaxed property, as applied to these mortgages, a taking of property without due process or equal protection of law in violation of the Fourteenth Amendment to the Constitution of the United States? (2) Were these mortgages subject to taxation by the town of Stamford or by the State of Connecticut during the lifetime of the decedent?

The statute under which the assessment was made is Chapter 78 of the General Statutes, 1930. Under it, "property which has not been subject to a town or

city or state tax during the year preceding the death of the decedent, is liable to a tax of two per centum of its appraised inventory value for the five years next preceding the date of death of decedent, provided that a proportionate reduction of this tax may be had by proof that any part of the tax has been paid, or that the decedent did not own any of this property during this period. The pecuniary liability imposed by this [statute] is a penalty in the nature of a tax for an omission to list property for taxation." *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 365, 114 Atl. 104. The chapter is entitled and the tax is generally known as an "Estate Penalty Tax." Its validity was considered and sustained in *Bankers Trust Co.* v. *Blodgett, supra,* and in *Lockwood* v. *Blodgett,* 106 Conn. 525, 138 Atl. 520. In the latter case the decisions of the United States Supreme Court bearing upon the taxing powers of a State with reference to intangible property located in a State other than that of the owner's domicil were reviewed, and it was held that the limitations of the Fourteenth Amendment to the Constitution of the United States are inapplicable to such property, and, in consequence, that certain bonds and mortgages on real estate in the State of New York, owned by a decedent domiciled in Greenwich, were subject to taxation under this statute (then §§ 1189 to 1192 of the General Statutes, 1918), notwithstanding that the bonds and mortgages were physically located in New York in the hands of attorneys who collected the interest and instalments on principal and remitted the same to the owner. In the course of the opinion it was noted (p. 537): "Since the *State Tax on Foreign-held Bonds* decision [82 U.S. (15 Wall.) 300], which held that intangibles have no *situs* independent of the domicil of the owner, a number of decisions have established the 'business *situs*' theory, which gives the intangible a

*situs* in a jurisdiction other than that of its owner when it is a part of a business which the owner is there conducting, or the intangible is being so used as to give it a business *situs* there." It was held, however (p. 539), that the facts as to the presence in New York of the bonds and mortgages did not give them a business *situs* there for taxation purposes.

The plaintiffs-appellants concede that if the bonds and mortgages involved in the present case were taxable at the decedent's domicil, the town of Stamford, no tax having been paid thereon in that town during her lifetime, they are a proper subject for the penalty tax, but contend that, upon the facts stipulated, this property had acquired a business *situs* rendering it taxable in New York and, if this be found to be so, their further claim is that it was taxable there only and not subject to tax in the place of the owner's domicil. The problem first to be considered is whether the bonds and mortgages had a business *situs* in New York.

Apparently it has been found impossible to develop a definite and accurate formula determinative of whether or not the facts in a given case suffice to bring the property involved within the operation of the business *situs* doctrine. "Just what will constitute a business *situs* is not susceptible of precise definition. This 'business *situs*' means, it would seem, what the words indicate, i. e., a *situs* in another state where a nonresident is doing business through an agent, manager or the like, in which business and as part thereof business credits, such as open accounts, notes, mortgages, deposits in banks, etc., are used and come within the protection of the State. The question arises in connection with various business transactions conducted by a person or corporation, generally through an agent, in another State; but the most common application of the rule is where a resident of one State has an agent in

another State who loans money of the nonresident, more or less as a regular business, and takes care of the collections and reinvestments, in which case the notes, mortgages, etc., taken by the agent are held to be subject to taxation although the owner is a nonresident." 2 Cooley, Taxation (4th Ed.) § 465; *Lockwood* v. *Blodgett, supra,* p. 538. "Thus, where an agent within the State, representing a nonresident principal, is clothed with power and authority to and does create credits or loan money for his principal within the State, the agent holding an actual and effective control over the business, retaining in his own possession within the State the evidences of such debts, or procuring their return to him when due for collection and return or reinvestment, the course of business being general and amounting more or less to a permanent business, then the State may by legislation separate the *situs* of such property for taxation from the domicil of the owner, and give it a *situs* within the State for purposes of taxation." 26 R. C. L., "Taxation," § 250; 61 C. J., "Taxation," § 217.

Cases involving, directly or indirectly, this doctrine have been numerous, although they usually have pertained to a tax assessed by or in the State of the claimed business *situs,* while here the tax attacked is one imposed in the State of the owner's domicil, it being claimed not only that the property is taxable elsewhere but also that such right to tax, if existent, excludes any such right at the domicil, although the latter proposition, as applied to property of this nature, has heretofore lacked authoritative sanction. *Lockwood* v. *Blodgett, supra.* The conclusion reached in most cases apparently has depended upon the particular set of circumstances there involved and the construction of statutes relied on as authorizing the tax, and no complete and definite statement as to what

particular elements are essential to the existence of a business *situs* has been deduced from the decisions.

It is generally recognized, however, that there must be a continuous or permanent business in the State in which it is sought to establish the *situs*, as distinguished from a temporary business or isolated transactions. In *State Board of Assessors* v. *Comptoir National D'Escompte*, 191 U. S. 388, 24 Sup. Ct. 109, and *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 395, 27 Sup. Ct. 499, it is made clear that a single credit or a series of separate credits is not sufficient, but that the credits or other intangibles of the nonresident must be employed, through a resident agent, in carrying on a permanent business for the owner. Numerous State court cases to the same effect are collected in 76 A. L. R., note, p. 808; 79 A. L. R., note, p. 344, and 26 R. C. L., p. 285. Also the property or right must be localized in some independent business so that its substantial use and value primarily attach to and become an asset of a business outside the State of the owner's domicil and constitute, as it were, the subject-matter or stock in trade of that business. *Westinghouse Electric & Mfg. Co.* v. *Los Angeles County*, 188 Cal. 491, 205 Pac. 1076; *Tax Commissioner* v. *Kelly-Springfield Tire Co.*, 38 Ohio App. 109, 175 N. E. 700; *Matzenbaugh* v. *The People*, 194 Ill. 108, 62 N. E. 546. Justification for a tax in the State of such *situs*, in addition to the protection afforded by the laws thereof, has sometimes been sought in the incidental competition with banks, or loaning or other businesses located in that State.

It is impracticable and would be unprofitable to attempt to recount or to effectively illustrate the varying states of fact entering into consideration in the numerous cases, but it is fair to say that in very few has a business *situs* warranting taxation been found to exist

through the mere management, by an agent, of the private investments of a nonresident individual. In the *Comptoir National D'Escompte* case, *supra,* the complainant was a French corporation having an office in New Orleans through which its agents made loans to "customers" (pp. 400-402). In *Metropolitan Life Ins. Co.* v. *New Orleans, supra,* the company was a New York corporation doing insurance business, including loans on policies issued by it, through its agents in Louisiana. The plaintiffs in subsequent cases—*Liverpool & L. & G. Ins. Co.* v. *Board of Assessors,* 221 U. S. 346, 31 Sup. Ct. 550, and *Orient Ins. Co.* v. *Board of Assessors,* 221 U. S. 358, 31 Sup. Ct. 554—were similarly situated. An earlier case—*New Orleans* v. *Stempel* (1899) 175 U. S. 309, 20 Sup. Ct. 110—involved taxation of notes, largely secured by real estate in New Orleans, which notes were owned by a resident of New York but were in the possession of an agent who collected the interest and principal as it became due and deposited the collections to the credit of the owner. The facts in some aspects resemble those of the instant case, but upon analysis of the decision, it appears that application of the business *situs* doctrine was not determinative, but that the presence in the State of the written evidences of the credit was the dominant factor in that decision, and, as well, in the *Comptoir National D'Escompte* case (see *Metropolitan Life Ins. Co.* v. *New Orleans, supra,* p. 400), although the physical presence of intangibles has since been held insufficient to confer jurisdiction to tax. *Blodgett* v. *Silberman,* 277 U. S. 1, 48 Sup. Ct. 410; *Lockwood* v. *Blodgett, supra,* p. 537. In *Bristol* v. *Washington County,* 177 U. S. 133, 20 Sup. Ct. 585, the plaintiff, a resident of New York, conducted a "loaning business" in Minnesota through an agent there.

*People ex rel. Jefferson* v. *Smith,* 88 N. Y. 576, concerned the taxability, by a New York municipality, of mortgage securities of a resident taken by agents in Illinois, Minnesota and Wisconsin, and subject to taxation under the laws of those States. "The agents had advertised offices and places of business where the business of the relator in making such loans was carried on and the securities held." The doctrine of business *situs,* as such, was not involved, the question being whether the New York statute was to be construed as subjecting to taxation the securities so taken and held, but the opinion gave assent to the conclusion in *Kirtland* v. *Hotchkiss,* 42 Conn. 427, 100 U. S. 491, that the legislature had power to authorize the taxation of these securities at the relator's domicil, although it construed the statute as not having done so.

We come now to consider the stipulated facts in the instant case which are relevant to inquiry as to whether the bonds and mortgages specifically involved may properly be regarded as having a business *situs* in New York within the true conception as to what confers such a *situs.* Considered by themselves, a business *situs,* for taxation purposes, away from the owner's domicil would be no more ascribable to them than to those which were denied such a *situs* in *Lockwood* v. *Blodgett, supra* (p. 539); indeed, it appears that two of them were not even original investments of the decedent, but were a part of a trust estate of another decedent and afterward distributed to her. Therefore a business *situs* for them must be derived, if at all, from circumstances other than those attending the situation of the bonds and mortgages themselves.

It appears that the decedent's agent, George W. Brown, was associated with a New York firm with which Edwin P. Smith, father-in-law of the decedent,

had been associated from 1870 until his death in 1890. The record contains no suggestion that this firm was engaged in or connected with any loaning or investment business. In 1919 Lizzie T. Smith received from an estate of which she was an heir approximately $160,000 which she, being then sixty-seven years old and never having engaged in business in any way, immediately turned over to Brown as her agent with authority to invest and reinvest it at his discretion, remitting the income from time to time to her at her convenience. The funds were deposited by Brown in a bank in New York City and he proceeded to purchase stocks, bonds, mortgages, and other investments, including the mortgages in question other than the two above mentioned. He deposited all the securities belonging to her in a safe deposit box in New York to which he had full access, withdrew them as he desired, and from time to time sold some, exchanged others, and in general exercised full authority and dominion over them. The decedent herself visited the safe deposit box but twice. All of the books of account and records of receipts and payments were kept at the office of Brown and regular charges were made by him for his services.

This situation when viewed as a whole cannot fairly be regarded as constituting the engaging or employing of capital in business by the decedent through her agent in any sense which reason and the precedents, when broadly considered, indicate as being that contemplated in order to constitute business *situs*. Activities and operations of a business nature were limited to the management, investment, and reinvestment of the decedent's private estate, differing in no respect from what she could and naturally might have done for herself but for disqualifications of age and inexperience. They savor not at all of the loaning of money

to the public as a business or other operations for profit which the nature and logical justification for the doctrine connote and which, as we have noted, has usually characterized situations recognized as conferring a business *situs*. Under such circumstances, at least, authority in an agent to invest and reinvest principal as well as collect and remit to the owner does not, as indicated *obiter* in *Lockwood* v. *Blodgett*, constitute such an engaging in business as to create this *situs*. The stipulation reveals, also, that no taxes, other than a recording tax paid at the time they were recorded, were ever assessed by the State of New York or any political subdivision thereof, on the bonds and mortgages or the income therefrom, although the statutes of that State provide for a tax on income "from all property owned and from every business, trade, profession or occupation carried on in this State by natural persons not residents of the State." Laws of 1919, Chap. 627; Tax Laws of New York (1932) § 351. This fact must be taken as signifying that the transactions in behalf of this decedent were not regarded by the New York taxing authorities as the carrying on of business in that State.

Therefore, our conclusion is that these bonds and mortgages had no business *situs* in New York. In the absence of such *situs* they would be taxable by the town of Stamford, the place of decedent's domicil.

Our answer to the first question reserved is "no," and to the second question "yes."

No costs will be taxed to either party in this court.

In this opinion the other judges concurred.