WILLIAM H. HACKETT, TAX COMMISSIONER, *vs.*
BANKERS TRUST COMPANY, TRUSTEE, ET ALS.

BANKERS TRUST COMPANY, TRUSTEE, *vs.* WILLIAM
H. HACKETT, TAX COMMISSIONER, ET ALS.

CHEMICAL BANK AND TRUST COMPANY, TRUSTEE, *vs.*
WILLIAM H. HACKETT, TAX COMMISSIONER, ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 12th—decided October 9th, 1936.

*Farwell Knapp,* with whom, on the brief, was *Edward J. Daly,* Attorney General, for William H. Hackett, tax commissioner.

*Richmond L. Brown,* for the Bankers Trust Company, trustee, and Chemical Bank and Trust Company, trustee, with whom was *Peter J. Ryan,* for himself as guardian ad litem of Martha Witherspoon Shinn et als.

*Mortimer L. Doolittle,* for the Bankers Trust Company, executor, with whom was *Frank P. Barrett,* for Mary Shinn Cushing, and *Thomas J. Ryle,* for himself as guardian ad litem of Samuel Dewey Cushing, 2d.

HINMAN, J.   Samuel Dewey Cushing died December 7th, 1933, domiciled in Stamford, leaving a will which was admitted to probate, and the Bankers Trust Company and Mary S. Cushing, widow of the testator, qualified as executors.   The decedent first became domiciled in Connecticut in 1920.   Prior to his death he had executed five trust indentures, one in 1918, two in 1924 and two in 1927, which are more particularly described hereafter.   The Bankers Trust Company, a New York corporation, is trustee of three of these trusts and the Chemical Bank and Trust Company, a New York corporation, is trustee of the other two. The five trust indentures were executed and delivered to the respective trustees in New York, and the assets forming the corpus of each—consisting of intangible personal property, chiefly bonds, with a few mortgages and stocks—were delivered in New York to the respective trustees and have since remained in that State, and the trusts have been entirely administered in New York.

After the death of the decedent the trustees took

proceedings in accordance with § 1380 of the General Statutes for a determination by the Court of Probate as to the taxability of the transfers under the several trust indentures, also as to by whom the succession taxes, if any, should be paid. It was conceded that none of the transfers were made in contemplation of death, but the tax commissioner claimed that they were taxable as transfers "intended to take effect in possession or enjoyment at or after the death of the transferor" under General Statutes, Cum. Sup. 1933, § 360b. The Court of Probate held the transfers under the 1918 trust indenture not subject to the Connecticut succession tax, but that those under the other indentures were subject to such tax, and that the taxes thereon were payable by the respective trustees out of the trust estate. The tax commissioner appealed to the Superior Court from the order as to the 1918 trust and the trustees appealed from the other orders.

The questions reserved for the advice of this court are: (1) Whether the transfers under any of the trust indentures are subject to Connecticut succession tax, and if so, under what statute? (2) If the answer to (1) is affirmative as to any of the trust indentures, should the value of the assets comprising the corpus of such trust be added to the value of all other taxable transfers made by the decedent, whether by will or trust, in order to ascertain the gross estate subject to tax, or should the transfers under such trust indentures be taxed separately and apart from other transfers, with separate exemptions and rates? (3) Is the tax, if any, on any of such transfers payable by the executors of the will out of the assets of the estate; or by the executors out of such assets with the right of reimbursement from the trustee of the respective trust indentures held subject to tax or from the respective beneficiaries; or by the respective trustees out of the

respective trust estates, either directly to the State or indirectly through the executors; or by the separate beneficiaries?

The earliest of the trust indentures (dated May 21st, 1918) establishes separate trusts of three portions of the trust corpus. With respect to the first part a life use is given to the settlor's sister, Sarah K. Cushing, and a successive life use to the settlor's mother, Kate Dewey Cushing; at the death of the two life tenants the corpus is to go to the settlor if then alive, or, if not, to his issue or in default of issue to Lehigh University. The disposition of the second portion is similar except that the first life use is given to the mother and the successive use to the sister. As to the third portion, a life use is given to the settlor's wife, a successive life use to the settlor if he survives his wife, and at the death of both the corpus is payable to their issue or, in default of same, to Lehigh University. At the date of the execution of this trust instrument the domicil of the settlor was outside of Connecticut, but he was domiciled in this State when the subsequent trusts were created.

In the trust of July 21st, 1924, the settlor reserved to himself the income for his life with remainders over after his death. He also reserved the right to alter the names of the ultimate beneficiaries and the amounts, which privilege he exercised by subsequent changes. The trust of August 10th, 1927, gives the first life use to the settlor's son, with successive life use to the son's widow, if any, then the principal to be distributed to the son's children; but if at the son's death he leaves no wife or children surviving, the principal is to revert to the settlor or, if he be not then alive, to the settlor's mother, or if she be not then alive, to the settlor's estate. The settlor reserved the right or privilege of changing beneficiaries, and the proportion of income or

the amount of principal to be paid to any beneficiary, other than adding or substituting himself as a beneficiary. In the trust of February 19th, 1924, the settlor reserved to himself the whole income for life with remainders over; that of September 23d, 1927, is substantially similar to the trust of July 21st, 1924.

The trustees and beneficiaries claim that Connecticut has no jurisdiction to tax the transfers under any of the five indentures because, (1) they were executed outside the State, to a nonresident trustee (also, in the case of the 1918 trust, by a nonresident transferor), depend upon the laws of another State (New York) for validity and enforcement, and consist of securities kept and administered outside the State; also (2) the corpus of the trusts acquired a business situs outside of this State. The first ground is adversely disposed of by our decision in *Gibson* v. *Blodgett* (sub-nom *Blodgett* v. *Guaranty Trust Co.*) 114 Conn. 207, 223, 158 Atl. 245, except as to the effect, if any, as to the 1918 trust, of the fact that the settlor at the time the trust indenture was executed was not domiciled in this State. This consideration is dealt with at a later stage of this opinion.

The second claim, applicable to all of the trusts, is that the securities comprising the corpus of the trusts acquired a business situs in New York, placing them beyond the taxing powers of Connecticut. Quite recently—in *Manufacturers Trust Co.* v. *Hackett* (1934) 118 Conn. 101, 170 Atl. 792—we had occasion to consider the question of business situs with reference to certain mortgage bonds owned by a Connecticut decedent, which were secured on New York real estate, and which had been, during the period of decedent's residence in this State, in the hands of an agent in New York who had authority to manage, invest and reinvest at his discretion, the funds entrusted to him

by the decedent, remitting the income to her from time to time. After thorough examination and discussion of the authorities relevant to the inquiry we held (p. 107) that in order to constitute business situs "there must be a continuous or permanent business in the State in which it is sought to establish the *situs*" and that the property employed "must be localized in some independent business so that its substantial use and value primarily attach to and become an asset of a business outside the State of the owner's domicil and constitute, as it were, the subject-matter or stock in trade of that business." No argument has now been advanced, nor has any additional precedent been cited, which inclines us to alter the view there expressed.

Under each of the trusts now under consideration, funds of the settlor were entrusted to the trustee under a general duty on its part to hold, manage, invest and reinvest the same, subject to some reserved rights of instruction and direction, collect the income and profits, and pay the net income and ultimately deliver the principal as specified in the trust instruments, respectively. We are unable to see that this situation, any more than that presented in *Manufacturers Trust Co.* v. *Hackett,* may fairly be regarded as "engaging or employing . . . capital in business by the decedent . . . in any sense which reason and the precedents, when broadly considered, indicate as being contemplated in order to constitute business *situs*" (p. 110). Logically there can be no material distinction between management under an agency and under a trust, as is confirmed by the decision in *In re Estate of Frank,* 192 Minn. 151, 257 N. W. 330, 335. In that case the settlor, while a resident of North Dakota, transferred intangible property to a Minnesota trust company as trustee, reserving the income for life, the income then to go to his widow for life and at her death to an

adopted daughter for her life, with remainders over. The powers and duties of the trustee were similar, in substance, to those in the present instances. The case concerned an attempt by Minnesota to impose a tax upon the transfer and it was held (p. 162) that "the involved trust property had not acquired, in Minnesota, 'a situs analogous to the actual situs of tangible personal property.' . . . It was not part of any local business conducted by Mr. Frank . . . The transfer thereof on his death took place under the laws of North Dakota. Hence the mere fact that the property, the title and enjoyment of which were the·subject of the transfer, had a quasi-situs here is . . . unimportant," citing *Blodgett* v. *Silberman*, 277 U. S. 1, 48 Sup. Ct. 410, 72 L. Ed. 749 (105 Conn. 192, 134 Atl. 778). We conclude, likewise, that the trust property here concerned had no such "business situs" in New York as to prevent taxation of its transfer here.

The trustees and beneficiaries also join in claiming, as to all the trusts, that they were not gifts "intended to take effect in possession or enjoyment at or after the death of the transferor" within the meaning of the statute (General Statutes, 1930, § 1360, and Cum. Sup. 1933, § 360b). We have repeatedly recognized and sustained the right of the State to impose a tax on "the privilege of succeeding to the possession and enjoyment of property which the decedent has conveyed away during his lifetime reserving only a right to the income during his own life." *Blodgett* v. *Guaranty Trust Co.*, 114 Conn. 207, 214, 158 Atl. 245; *Bryant* v. *Hackett*, 118 Conn. 233, 244, 171 Atl. 664; *Blodgett* v. *Union & New Haven Trust Co.*, 97 Conn. 405, 410, 116 Atl. 908. The title of the remaindermen, after the donor's right to income for his life, lacks the right to possession and enjoyment until the death of the donor. "Reservation of a life estate is such a postponement of

possession and enjoyment as that the tax attaches, under such a statute as we have." *Blodgett* v. *Guaranty Trust Co.,* supra, p. 219. This is decisive in favor of the taxability of the transfers under the trusts of February 19th and July 21st, 1924, and September 23d, 1927.

We have disclaimed any valid distinction between transfers reserving a life use to the transferor and those giving the life use to another, with remainder over. *Bryant* v. *Hackett,* supra, p. 244. We see no reason why the reasoning and principles sustaining taxability in cases of life estate reserved by the donor primarily and from the inception of the trust may not as well apply in the case of a reservation, to the donor, of income for his life, successive upon a life use granted, in the first instance, to a third person—as in the third portion of the 1918 trust—to the settlor's wife, then to the settlor if he survive her. In either case the right of any remainderman to possession and enjoyment of the corpus is necessarily postponed during the life of the settlor and the death of the settlor is requisite to a termination of this postponement. Although, in the present instance, possession and enjoyment may be further deferred because of the survival of the wife, the death of the settlor worked a material change in the remaindermen's relation to the property in eliminating the potential consequences of the continued life of the settlor, with reference at least to the time of taking possession and enjoyment and possibly to their right of accession at all, the right of children or grandchildren of the settlor to receive the corpus being dependent upon their being living "at the time fixed for distribution of principal" i. e., at the decease of the survivor as between the settlor and his wife. In the latter aspect the interest of the remaindermen may well be regarded as vested in interest, possession and

enjoyment only through the settlor's death. The purpose of the statutory provision imposing a tax upon transfers intended to take effect in possession or enjoyment at or after the death of the settlor is to prevent avoidance of inheritance tax. *Bryant* v. *Hackett,* supra, p. 244. That being its purpose, the provision is necessarily related to the death of the settlor. Consequently the tax applies to transfers wherein the death of the settlor is a factor in the devolution of the use or enjoyment of the property. "If the beneficiary under the instrument of gift succeeds to an interest in the property not previously enjoyed, which bears a distinct and necessary relation to the death of the grantor or settlor, that is a succession subjected to the excise by the terms of the statute." *Coolidge* v. *Commissioner of Corporations,* 268 Mass. 443, 450, 167 N. E. 757.

In *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations* (1929) 267 Mass. 240, 166 N. E. 729, the terms of the trust were such that the remaindermen could take only if they survived not only the donor but also the holder of the immediate interest in possession. Primarily in answer to a contention that there had been a completed gift of the remainder at the time the trust indenture was entered into, the court denominated (p. 244) the interest that then passed to the remaindermen as "a possibility of right which could not ripen into anything but a contingency" until, as well as the occurrence of other events, the settlor had died.

The first and second portions of the 1918 trust provide for reverter of the corpus to the settlor at the death of the survivor of the two successive life tenants, if the settlor be then living or, if he be not living, pass it to his issue or in default thereof to Lehigh University. The trust indenture of August 10th, 1927, makes a similar provision for reverter of principal to the

settlor in default of wife or children of his son at the termination of the life use of the latter, if the settlor be then living, with alternative remainders to others if the settlor be not then alive. The general subject of the effect upon succession taxability of such disposition of property that there is a possibility of its reverting to the donor presents considerable difficulties, and varying statutes, states of fact, and conflicting judicial views have produced a confusion and conflict of authority, even in the same State, which appears irreconcilable. Discussion and citation of the cases involving, in some degree and aspects, possibility of reverter would be as unproductive as a study of them has proved to be, and we ground our decision as to this point upon what we regard as sound reasoning rather than upon attempted matching of authorities.

The trust provisions now being considered are, in substance, "cases in which express provision is made for reverter upon the termination of a present interest in enjoyment for a term not defined by references to the donor's life, conferred upon another than the donor, with an alternative disposition of the remainders if the donor predeceases the donee of such present interest." Rottschaefer, "Taxation of Transfers Intended," 14 Minnesota Law Review, 483. As to this class Professor Rottschaefer says (p. 484): "The right of the remainderman can never in such a case be anything but conditional as long as the donor lives. Whether that involves the conclusion that he can never enter into possession and enjoyment of the property until at or after such death depends on what is meant by possession and enjoyment. There is no doubt that on the donor's death before the owner of the present interest in enjoyment dies, the remainderman's interest increases in value and that some economic benefits shift to him at the time and because of such death, nor

can it be denied that those benefits could not have come to him prior to such death. There exist, therefore, good reasons for taxing the succession of such remainders, but the true reason is not that the deed created a possibility of reverter to the donor but that it was only at the time of, and because of, the donor's death that there occurred a fundamental change in the nature of the remainderman's relations in respect of the property, and that that change could not, under the deed of transfer, have occurred prior thereto."

The foregoing statement reflects, in essence, the reasoning in *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations,* supra. The trust involved in that case was created in 1907, by indenture between Samuel M. Nickerson, Matilda P. Nickerson, his wife, Cecelia A. MacDonald, and the plaintiff bank. By its terms the latter was to hold $50,000 in trust, pay the income to Cecelia A. MacDonald during her life and, upon her death, pay the principal to either of the Nickersons if living, and if neither be living, to their grandchildren or the issue of any deceased grandchild, with further remainders over in case of no such issue surviving. Cecelia MacDonald agreed to devote all her time to the care of the Nickersons and the indenture contained a provision that if she should be unable or unwilling to do so it might be modified or terminated by agreement of the four parties. Otherwise, the trust was irrevocable. The agreement was not so modified or terminated; Matilda Nickerson died in 1912, Samuel in 1914, Cecelia MacDonald in 1926, and upon her death the trust estate passed to a surviving grandchild and two children of a deceased grandchild. It was stipulated that the trust fund deposited was the property of Samuel M. Nickerson and this action involved taxability in connection with his estate. It was contended that the trust was not a deed, grant or gift made or in-

tended to take effect in possession or enjoyment after the death of the grantor (Samuel M. Nickerson) but a gift completed in 1907. The court, Rugg, C. J., held, however, that "The gift made under the indenture for the benefit of the grandchildren did not under any legal principle take effect in possession or enjoyment by them in 1907. Until the death of Matilda P. Nickerson in 1912, there was always a possibility that the trust might be terminated under the terms of the indenture . . . and the trust property revest in the settlor or settlors. Until the death of Samuel M. Nickerson in 1914, there was always present the possibility that Cecelia A. MacDonald might predecease him and thus the trust come to an end and all the property revert to him. Until the decease of both Matilda P. and Samuel M. Nickerson without modification or termination of the indenture by agreement of the four parties thereto, Samuel M. Nickerson had not fully released his hold on the trust property and divested himself of all interest in it. . . . Manifestly the trust did not pass from Samuel M. Nickerson, by an instrument made or intended to take effect in possession or enjoyment, to any person absolutely or in trust until after his death. The utmost which passed in 1907 to either of the grandchildren as beneficiaries was a possibility of right which could not ripen into anything more than a contingency unless and until the occurrence of three events, each wholly uncertain in nature, namely, (1) failure of the four parties to the indenture to modify or terminate the trust, (2) survival by Cecelia A. MacDonald of both Samuel M. and Matilda P. Nickerson, and (3) . . . survival by one or both grandchildren. . . . Each of these events was a contingency over which the ultimate beneficiaries of the trust could exercise no control. All three of these events must finally coexist in their favor before the

ultimate beneficiaries could by any possibility succeed to the posesssion and enjoyment of the property constituting the trust." "This is not an instance where the succession passed to the beneficiaries independently of the death of the person from whom the property passed." "These considerations render inevitable the conclusion that the property . . . passed 'by deed, grant or gift . . . intended to take effect in possession and enjoyment after the death of the grantor,'" Samuel M. Nickerson.

Application of the foregoing reasoning and conclusions to the somewhat less complicated situation under the first two portions of the 1918 Cushing trust leads to a similar result. Until the death of Samuel Cushing there was always the possibility that the two surviving life tenants (sister and mother) "might predecease him and thus the trust come to an end and all the property revert to him" and, until then, he "had not fully released his hold on the trust property and divested himself of all interest in it." "The utmost which passed"—prior to his death, to his wife, in case she survived him, or his issue, if any, or to Lehigh University—"was a possibility of right which could not ripen into anything more than a contingency" until the concurrence of the death of Samuel (terminating his interest), as to his wife, her survival of him, and as to issue, their existence and survival. Their respective chance of receiving anything under the trust depended upon the coming to pass of these contingent events. If the settlor (Samuel) survived his mother and sister, "the trust fund would revert to [him] freed from all trusts" and the rights of all remaindermen would come to an end. The trust of August, 1927, affords a similar analogy, in principle. Here, as in the Massachusetts case, these considerations warrant a conclusion that the transfers to the ultimate beneficiaries were

"by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor." See also *DuBois' Appeal,* 121 Pa. St. 368, 384, 15 Atl. 641. To give taxable effect to a possibility of reverter provided for in a trust instrument also accords with the policy evinced by General Statutes, Cum. Sup. 1933, § 362b, concerning reservation in a deed of trust of powers of revocation upon the exercise of which the property might revest in the settlor, making such transfer taxable to the extent that such powers remain unexercised.

We have consistently construed the statute under which taxability is here claimed as "intended to reach for the purpose of taxation the shifting of the enjoyment of property—the 'economic benefits' thereof or 'economic interest' therein . . . from a former owner at his death, even though such shifting of enjoyment followed necessarily from a prior transfer of title *inter vivos." Blodgett* v. *Guaranty Trust Co.,* 114 Conn. 207, 219, 158 Atl. 245; *Bryant* v. *Hackett,* 118 Conn. 233, 244, 171 Atl. 664. We also have held that the operation of the doctrine of *mobilia sequuntur personam*—that intangible personalty, although physically outside the State of the domicil of the owner, has such a situs at the domicil that its transfer on the death of the owner may be subjected to inheritance tax under the laws of the State of domicil—extends to transfers of the nature here involved. *Bryant* v. *Hackett,* supra, p. 248. Manifestly, for these purposes, the determinative domicil is that of the decedent at the time of the death which occasions the transfer or "shifting of the enjoyment" which is subjected to the tax, rather than that at the time of the "prior transfer . . . *inter vivos.*" *Bryant* v. *Hackett,* supra, p. 244. What is sought to be taxed is not the property itself but "rather and only the . . . succession to . . . the title and beneficial en-

joyment of the property which took place by reason of [the] death. . . . 'Since death duties rest upon the power of the State imposing them to control the privilege of succession' the domiciliary State is the one having the power to levy a death tax, if any. The thing the transfer of which is taxed is 'an incorporeal property right which attaches to the person of the owner in the State of his domicil.' " *In re Estate of Frank* (1934) supra, p. 162.

The appellants correctly concede that the power to impose a tax upon a gift intended to take effect in possession or enjoyment at or after death is in aid of the power of the State to protect itself against avoidance of its taxation laws through inter vivos transfers such as those here involved. *Bryant* v. *Hackett,* supra, p. 224; *Blodgett* v. *Guaranty Trust Co.,* supra, p. 211. It may be conceded, also, that, as these appellants claim, Connecticut must depend upon its own jurisdiction to support a tax imposed by it, irrespective of whether or not a tax upon such a transfer is exacted by the State in which the transfer was made. We regard the domicil at death as determinative of the right to tax rather than that at the time of the creation of the trust, and hold that taxability, by Connecticut, under the 1918 trust, is not affected by the fact that at its creation the settlor was domiciled elsewhere. As we pointed out in *Blodgett* v. *Guaranty Trust Co.,* 114 Conn. 207, 223, 158 Atl. 245, *MacClurkan* v. *Bugbee,* 106 N. J. L. 192, 150 Atl. 443, involved a statute which, as distinguished from ours, imposed a tax only when the transfer is "made by a resident." We do not find persuasive the further considerations mentioned in that case as militating against the right of a State to tax a gift made by a nonresident subsequently removing into and dying domiciled in that State.

The statutes in force at the time of the decedent's

death under which the tax is claimed (General Statutes, 1930, § 1360, and Cum. Sup. 1933, § 360b) have, since 1915, continued unchanged in any respect affecting any of the transfers here involved. *Blodgett* v. *Guaranty Trust Co.*, supra, p. 212. In the provision in § 1360 (b) that "when the transfer is from a nonresident of this state" the tax imposed is on the transfer only of (1) real property situated in this State, (2) tangible personal property which has an actual situs in this State, "nonresident" refers to one who is such at date of death, as to whom the right of Connecticut to tax would be limited to tangible property within its jurisdiction (*Frick* v. *Pennsylvania*, 268 U. S. 473, 45 Sup. Ct. 603), rather than to residence at the time of the transfer. General Statutes, 1918, § 1265; Public Acts, 1919, Chap. 152, § 5; Public Acts, 1921, Chap. 297, § 4; Public Acts, 1929, Chap. 299, § 42. The provision inserted by § 2 of Chapter 299 of the Public Acts of 1929 in General Statutes, 1918, § 1361, that a transfer of property wherein the transferor reserves to himself a life income or interest "shall be construed prima facie to have been intended to take effect in possession or enjoyment at death" worked no material change as to the transfers taxed but merely tended to facilitate administration of the law. *Bryant* v. *Hackett*, supra, p. 245.

Considerations such as the retention by the settlor of enjoyment of the property or dominion over it until his death so that it then passes *from him* are important with reference to the Federal estate tax, which is upon the transfer, at death, of property of and from the decedent, but have not like significance with respect to a tax, such as that here involved, levied upon the beneficiary for the privilege or right of succession to property—and wherein the determinative consideration is whether there is, under the terms of the transfer, a

shifting of the enjoyment of property—an economic interest or benefit therein—occasioned by and occurring at or after the death of a decedent who was "a former owner" thereof. *Blodgett* v. *Guaranty Trust Co.*, supra, p. 219. Now, as heretofore, we feel at liberty to refrain from giving an effect adverse to taxability under our law to cases involving and construing Federal statutes imposing estate taxes, which in the present instance, as heretofore, principally are depended upon in opposition to such taxability. (Idem, p. 218). *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39, 56 Sup. Ct. 74, the important case decided since this question was last before us, is of the latter class, dealing with the Federal law taxing transfers of interests in a trust "passing from the possession, enjoyment or control of the donor at his death" (p. 43).

Our conclusion that the several trusts are subject to the succession tax makes necessary consideration of the further questions reserved which pertain to the computation and payment of the tax. The first of these inquiries whether the gross estate subject to tax should be ascertained by adding the value of the assets composing the corpus of each trust to the value of all other taxable transfers made by the decedent, whether by will or trust indenture, or should be taxed separately, with applicable exemptions and rates. The statute in effect at the death of the decedent (General Statutes, 1930, § 1368) provides that, for taxation purposes, the gross estate "shall be the total of the fair market value of all the property transferred subject to tax." Prior to the adoption of this statute in 1929 (Public Acts, Chap. 299, § 9) there was no express statutory direction in this respect but in our view that statute gave formal expression to a principle logically applicable, in the absence of statutory direction—that for the purposes of this tax regard should be had to the aggregate value

passing to beneficiaries both under a will or by inheritance and under transfers, through inter vivos trusts, taking effect in possession or enjoyment at or after the death of the decedent. As suggested by the tax commissioner, to treat each ante mortem taxable transfer as a separate transaction to be taxed with separate exemption and rate would permit the fantastic result of defeating taxability entirely through separate transfers each of an amount within the statutory exemption. Such a result would be contrary to the policy long evinced by our statute that only one exemption shall apply to the net estate passing to all beneficiaries or distributees in each class. General Statutes, 1930, § 1366; General Statutes, 1918, § 1264. Under a rule which we hold to have been applicable at the date of the creation of each of the trusts as well as under the statute in effect at the settlor's death, all taxable transfers should be combined in determining the gross taxable estate.

The remaining question is by whom and out of what funds or assets the tax upon transfers under the trusts is to be paid. Under our statutes, in the absence of different direction in a will, taxes upon transfers of property made by a decedent during his lifetime are to be paid from the property passing thereby to the donee or beneficiary. They are payable primarily by the executor of the will or the administrator of the estate, but with a right and duty to collect the tax from the donee or beneficiary or, in the case of a trust, from the trustee. General Statutes, §§ 1388, 1396. The answer to the present question depends upon the construction and consequent effect to be accorded to the provision contained in the will of Samuel Cushing that "All inheritance or transfer taxes shall be paid out of the residue of my estate and shall not be charged against the separate beneficiaries." Read by itself and consid-

ered independently, this provision, specifying, as it does, "transfer" as well as "inheritance" taxes, would be broad enough to include the taxes involved in this reservation, but if we regard the situation broadly, as we should, it is difficult to believe that the testator had them in contemplation. The will contains no mention of or reference to any prior transfers in trust made by the testator. The stipulated facts expressly state that "At the time of the execution of said will it was the decedent's belief that none of the trust indentures . . . would be subject to any transfer, estate, or inheritance taxes." Even without this stipulation it would be difficult to believe that trusts which able counsel now so earnestly contend were so conceived and framed as to exonerate all the transfers effected thereby from the imposition of a tax, were within the intention of the testator when he made this testamentary provision. We think that in ascertaining the intent deducible from the clause in question these considerations outweigh the technical scope which might be accorded the words "all inheritance or transfer taxes." Also the use of the disjunctive "or" may be taken as indicating an uncertainty as to the correct designation of the taxes incident to the provisions of the will and an intention to comprehend them, rather than to include prior transfers inter vivos which we are bound by the stipulation to regard as outside the contemplation of the testator at the time. "As the practical effect of a provision making a legacy or devise free of tax is to increase the gift, and to shift the burden which the legacy or devise would ordinarily bear on to the shoulders of the residuary beneficiaries, the intent of the testator to make such a gift will not be drawn from vague or uncertain language." *Sherman* v. *Moore*, 89 Conn. 190, 193, 93 Atl. 241. The result of the construction which we adopt is that while

the tax upon such transfers under the trust indentures as we have held to be taxable should, in the first instance, be paid by the executors, they will be entitled to reimbursement from the beneficiaries of such transfers.

Our answers to the questions reserved are as follows: (1) The transfers with respect to amount contributed to the corpus of all of the trusts by Samuel Dewey Cushing and taking effect in possession or enjoyment at or after his death are taxable under the statute in effect at the date of his death. (2) In ascertaining the gross estate subject to tax the value of so much of the assets of the corpus of each trust as was contributed by Samuel Dewey Cushing and so transferred should be added to the value of all the other taxable transfers made by the decedent by will and inter vivos. (3) The taxes should be paid by the executors of the will of Samuel Dewey Cushing, with the right of reimbursement, through the trustees of the respective trusts, from the respective beneficiaries.

No costs will be taxed in this court.

In this opinion the other judges concurred.