LOUISE J. TOPPING, EXECUTRIX (ESTATE OF JOHN A. TOPPING) ET AL. *v.* CHARLES J. McLAUGHLIN, TAX COMMISSIONER.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued April 5—decided May 5, 1939.

*Ralph E. Brush,* with whom, on the brief, was *Graham Sumner,* for the appellant (plaintiff).

*Frederic W. Dauch,* deputy tax commissioner, with whom on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (defendant).

HINMAN, J.  By an instrument dated June 5, 1923, John A. Topping of Greenwich conveyed to himself as trustee certain shares of stock to hold in trust, pay the net income therefrom to his wife, Louise J. Topping, during her life, and upon her death to transfer three-fifths to his son Wilbur B. Topping if living and if not to his issue in equal shares, pay the net income from the remaining two-fifths to his son Henry J. Topping during his life, and upon his death transfer the principal to Henry's issue then surviving him;

"provided, however, that if my said wife should, during my life, die, or become, in my judgment, incompetent to manage her affairs, I reserve and shall have the right and power at any time thereafter to revoke and terminate said trust. Upon such revocation or termination, all property held in trust hereunder shall revert to and become my own absolute property free and clear of all trusts and rights of others." Mr. Topping died August 24, 1934; his wife had continued competent to manage her affairs and survived him and the power of revocation provided for as above stated was not exercised. Both sons also survive, and have issue. After Mr. Topping's death the Bankers Trust Company became substituted trustee, and upon its application, with the named plaintiff, as executrix of the will of the decedent, for a determination of taxability of the transfers under the trust agreement, the Court of Probate found them taxable under § 1361 of the General Statutes as amended (Cum. Sup. 1933, § 360b) as a "gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor." The Superior Court reached a like conclusion and rendered judgment accordingly. The issue upon this appeal is whether or not the effect of the quoted provision for revocation is to subject the transfer to the succession tax.

As to the effect of a reservation of a power of revocation by the transferor upon the taxability of a transfer as one intended to take effect in possession or enjoyment at or upon the transferor's death, the decisions are far from harmonious, but Prof. Rottschaefer, in his exhaustive discussion of the "Taxation of Transfers Intended," 14 Minnesota Law Journal (1930) p. 453, cites and discusses cases which he states (p. 477) "It can at least be said . . . give [to] those states that have not yet decided the matter a respecta-

ble foundation on which to predicate the taxability of the acquisition of interests by transfers in which the transferor has reserved a power to alter, revoke or terminate." *Matter of Bostwick,* 160 N. Y. 489, 55 N. E. 208; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations,* 267 Mass. 240, 166 N. E. 729; *Saltonstall* v. *Treasurer and Receiver General,* 256 Mass. 519, 153 N. E. 4, affirmed 276 U. S. 260, 48 Sup. Ct. 225; *In re Fulham's Estate,* 96 Vt. 308, 119 Atl. 433; *In re Fosdick,* 102 N. J. Eq. 45, 139 Atl. 318; *Plainfield Trust Co.* v. *McCutcheon,* 8 N. J. Misc. R. 593, 151 Atl. 279, 280, affirmed 108 N. J. L. 201, 154 Atl. 629; *Hasbrouck* v. *Martin,* 120 N. J. Eq. 96, 183 Atl. 735, 738.

"It is only when the owner relinquishes all power of control over the property and confers upon another the right to dispose of it and use its avails, without subsequent restriction or control by the donor, that the transfer escapes the tax." *In re Fulham's Estate,* supra, 315. "The reservation of a right to revoke—or the reservation of any other right by the exercise of which the donor may regain a beneficial interest in the trust fund—it would seem places such a deed of trust in the category of gifts intended to take effect in possession or enjoyment at or after the death of the donor. It is true that there is an actual transfer . . . of some equitable interest to the equitable donee, at the time of the delivery of the trust deed. But that equitable interest of the donee is not an absolute interest. It is defeasible at any moment the donor decides to revoke." *In re Fosdick,* supra, 47. The annotator in 67 A. L. R. 1248, observes "that most of the later cases have apparently repudiated the rule stated in the earlier annotation [49 A. L. R. 867], that the reservation of a power of revocation by the transferrer does not, of itself, make the transfer one intended to take

effect in possession or enjoyment at or after the trans-
ferrer's death." "The proposition that one can trans-
fer property by perfect, complete, and final gift, and
yet retain the power to instantly destroy the gift and
retake the property at any time, involves a confusion
of thought and a conflict of terms that are not easily
explained or reconciled. . . ." *Downes* v. *Safe De-
posit & Trust Co.*, 163 Md. 30, 39, 161 Atl. 400.

The policy of this state as to the effect of powers
of revocation upon succession taxability was evinced
by legislative action in 1929 by the adoption of a
statute (Public Acts, Chap. 299, § 5, General Statutes,
1930, § 1364, now Cum. Sup 1933, § 362b) providing
that "a transfer of property by deed of trust wherein
the settlor reserved to himself, or to himself and others
not beneficiaries, powers of revocation, alteration or
amendment, upon the exercise of which the property
might revest in him, shall, upon the death of the set-
tlor, be taxable to the extent of the value of the prop-
erty subject to such powers and with respect to which
such powers remain unexercised." See *Hackett* v.
*Bankers Trust Co.*, 122 Conn. 107, 122, 187 Atl. 653.
It is clear, therefore, that the remainder interests
would be taxable if the trust instrument provided, as
is usual, that the settlor might at any time revoke,
at will, the trust as to the estate passing to benefici-
aries by virtue of the provisions of the trust instru-
ment. The plaintiffs contend, however, that this con-
sequence is averted because the reserved right of the
settlor to revoke and terminate and thereby work a
reverter to him of the property held in trust was made
contingent upon the occurrence of either the death
of his wife, during his life, or her becoming, in his
judgment, incapable of managing her affairs, con-
tingencies which might not and in fact did not arise.
It is not quite correct that, as the appellants claim,

the settlor had no control over the happening of these, for the second of them depended upon the exercise by him of his judgment regarding the wife's managerial capacity. Nor is it accurate to say, as they do, that if Mrs. Topping had died before her husband, the latter's power of revocation would not have applied to the remainder interest and right of the son Wilbur in and to three-fifths of the principal of the fund. The settlor's right to revoke would become effective immediately upon the wife's death and exercisable "at any time thereafter" and might have been so exercised as to annul the provisions for delivery of principal by the trustee to Wilbur as well as the trust for Henry during his life, and the remainder interest to his issue upon his death.

In *Bryant* v. *Hackett,* 118 Conn. 233, 171 Atl. 644, under the trust which was created by Mrs. Eastwick, the income was payable to her husband during his life and, upon his death, to Mrs. Eastwick for her life if she survived him. Upon the death of the survivor, unless Mr. Eastwick had exercised by will a power of appointment given him by the trust instrument, the trustee was to transfer the property to the three daughters of Mr. and Mrs. Eastwick, the issue of any deceased daughter to take the share of the parent. After Mrs. Eastwick's death before Mr. Eastwick he might revoke the trust in whole or in part, any property thereby released to become part of Mrs. Eastwick's residuary estate. Concerning the effect of these provisions we said (p. 247): "After Mrs. Eastwick died, Mr. Eastwick had the power of determining who should receive the property, either by revoking the trust in whole or in part or by some provision in his will. . . . No one, when Mrs. Eastwick died, even her daughters, had more than an expectancy and there were no persons with vested rights to the property;

*Lawrence* v. *Beardsley,* 74 Conn. 1, 4, 49 Atl. 190; so that there could be by no possibility anyone who could possess or enjoy it until some time thereafter. The remainder interests fell within the intent of the Legislature in imposing a tax upon gifts intended to take effect in possession or enjoyment after the death of the donor."

There is some helpful analogy to the present situation in *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations,* supra. The terms of the trust there involved, which are outlined in *Hackett* v. *Bankers Trust Co.,* supra, 119, included a provision that if Cecelia A. MacDonald, who was given the income for life, was unable or unwilling to devote all her time to the care of Mr. Nickerson, the grantor, and his wife, the trust indenture might be modified or terminated by agreement of the four parties—Mr. and Mrs. Nickerson, Miss MacDonald and the trustee bank. As to this it was said (see 122 Conn. 120): "Until the decease of both Matilda P. and Samuel M. Nickerson without modification or termination of the indenture by agreement of the four parties thereto, Samuel M. Nickerson had not fully released his hold on the trust property and divested himself of all interest in it. . . . Manifestly the trust did not pass from Samuel M. Nickerson, by an instrument made or intended to take effect in possession or enjoyment, to any person absolutely or in trust until after his death. The utmost which passed [at the creation of the trust] to either of the grandchildren [remaindermen] as beneficiaries was a possibility of a right which could not ripen into anything more than a contingency unless and until the occurrence of three events, each wholly uncertain in nature [including] failure of the four parties to the indenture to modify or terminate the trust. . . . Each of these events was a contingency over which the ulti-

mate beneficiaries of the trust could exercise no control. All three of these events must finally coexist in their favor before the ultimate beneficiaries could by any possibility succeed to the possession and enjoyment of the property constituting the trust. . . . These considerations render inevitable the conclusion that the property . . . passed 'by deed, grant or gift . . . intended to take effect in possession and enjoyment after the death of the grantor,' Samuel M. Nickerson."

As to the present case it may be similarly said that, from the time of the creation of the trust, the interest of the named beneficiaries succeeding the life estate of the wife was no more than a contingency unless and until it became certain that neither of the possible events—death of the wife or her incompetence to manage her affairs—would occur during the lifetime of Mr. Topping and if they did, that he would not exercise his right "at any time thereafter" to revoke and terminate the trust, uncertainties which could be resolved decisively only at and by Mr. Topping's decease. Upon the occurrence of either of the two prescribed contingencies, the settlor might revoke the trust wholly and absolutely, whereby he would become revested with the whole corpus of the fund which he would then own outright. The possibility that this might be done continued up to the time of his death, and the equitable title of the beneficiaries after the life use of the wife remained contingent until it should be conclusively established by the death of the settlor that the right to revoke would not arise and be exercised. As the trial court aptly expresses it in the memorandum of decision, "the right to possession and enjoyment of the fund by the beneficiaries has been made certain only by reason of the death of the settlor. Not until his death could it be known whether or not

he would terminate the trust." We conclude, therefore, that the fact that the right to revoke was contingent does not take the grants of the remainder interest out of the classification of those intended to take effect in possession or enjoyment at or after the death of the transferor.

The purpose of this tax is to prevent avoidance of inheritance tax. It applies to transfers wherein the death of the settlor is a factor in the devolution of the use or enjoyment of the property. It is intended to reach a shifting of the enjoyment of property—economic benefits thereof or economic interest therein—which bears a distinct and necessary relation to the death of the settlor. *Hackett* v. *Bankers Trust Co.,* supra, 117, 122. As applied to a remainder so limited as to commence in actual possession or enjoyment at or after the death of the transferor, the reservation of a power to revoke makes the remainderman's interest so contingent, until the transferor's death, as to be, if not unmarketable at other than a nominal sum, at least so speculative as to seriously affect its value. He, therefore, acquires at that death definite economic benefits which may be said to shift to him at that time —the absolute right to a present or future enjoyment —and its absolute character in fact makes it worth more than his prior contingent interest. "There are, therefore, very cogent reasons for treating the mere reservation of a power to revoke as making the transfer of a remainder taxable where that does not in fact commence in possession and enjoyment before the contingency to which it is subject is removed by the transferor's death." Rottschaefer, Op. Cit., 479. Concerning rights to use or income enjoyed prior to the transferor's death, however, the same author says (p. 478) that "It is difficult to see on what theory [these]

uses . . . can be considered as having taken effect at such death; the economic benefits from them certainly did not shift to the owner of the interest at that time. The cases declining to tax the acquisition of such an interest merely because subject to a reserved power to revoke seem clearly sounder than the few that tax it."

The remainder interests after the life interest of Mrs. Topping in the income are taxable, but her interest is not, and we so construe the decree of the Court of Probate and the judgment of the Superior Court. *Bryant* v. *Hackett,* supra. If, as we hold, the result is correct, it is immaterial whether the transfer is taxable under § 360b, Cum. Sup. 1933, as the Court of Probate and the trial court held, or § 362b. *In re Kellogg,* 123 N. J. Eq. 322, 325, 149 Atl. 263, 265.

There is no error.

In this opinion the other judges concurred.